53 F.3d 881
 26 Envtl. L. Rep. 20,253
 FRIENDS OF the BOUNDARY WATERS WILDERNESS; Sierra Club;
The Wilderness Society; Defenders of Wildlife; Wilderness
Watch; Wilderness Inquiry; Minnesota Public Interest
Research Group; Izaak Walton League, of America,
Appellants/Cross-Appellees,
v.
Jack Ward THOMAS, as Chief of the United States Forest
Service; Mike Espy, as the Secretary of
Agriculture; Appellees/Cross-Appellants,
Minnesota Forest Industries, Inc.; Intervenor,
City of Ely; Conservationist With Common Sense; F.B.
Hubachek, Jr.; Wilderness Outfitters, Inc.;
Intervenor--Amicus Curiae,
Hedstrom Lumber Company, Inc., Intervenor.
 Nos. 94-1794, 94-1936.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Oct. 13, 1994.
Decided April 14, 1995.
 
 Richard Alan Duncan, Minneapolis, MN, argued (Brian B. O'Neill and Madhulika Jain, on the brief), for appellants.
 Peter A. Appel, Dept. of Justice, Washington, DC, argued (Robert Klarquist, Robert Small, and Maria A. Iizuka, on the brief), for appellees.
 Before MCMILLIAN, Circuit Judge, LAY and JOHN R. GIBSON, Senior Circuit Judges.
 JOHN R. GIBSON, Senior Circuit Judge.
 
 
 1
 The Friends of the Boundary Waters Wilderness' efforts to recover attorney's fees incurred in litigation over the management of the Superior National Forest in Minnesota have produced this appeal and cross-appeal. The Friends disputed two portions of the Forest Service's 1986 Land Resource Management Plan: (1) the continued use of motorized portages in the Boundary Waters Canoe Area Wilderness; and (2) the increase of below-cost timber sales in the Superior National Forest. The Friends appeal from the district court's denial of attorney's fees on the motorized portage issue arguing that the district court failed to apply the correct legal standard in determining whether the Chief of the United States Forest Service's position was substantially justified. The Chief and the Secretary of Agriculture cross-appeal arguing that the district court erred in awarding the Friends attorney's fees on the below-cost timber sales issue. We reverse and remand for an award of fees on the portage issue, and we partially affirm the award of fees on the below-cost timber sales issue.
 
 
 2
 The case now before us flies in the face of the Supreme Court's admonishment that the "attorneys' fees issue should not result in a second major litigation." Jenkins v. Missouri, 838 F.2d 260, 264 (8th Cir.) (citing Hensley v. Eckerhart, 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983)), cert. denied, 488 U.S. 889, 109 S.Ct. 221, 102 L.Ed.2d 212 (1988). Here not only is there major litigation, but it is necessary that we consider the government's argument that the Friends had no standing to seek relief which they have already obtained.
 
 A.
 
 3
 The Boundary Waters Canoe Wilderness Area located in northeastern Minnesota consists of some 1,075,000 acres of streams, lakes, and forests. In 1978, Congress passed the Boundary Waters Canoe Area Wilderness Act (The Wilderness Area Act), Pub.L.No. 95-495, 92 Stat. 1649 (1978). Section 4(g) of the Act states:
 
 
 4
 Nothing in this Act shall be deemed to require the termination of existing operation of motor vehicles to assist in the transport of boats across the [Prairie Portage, Four Mile Portage, and the Trout Lake Portage] during the period ending January 1, 1984. Following said date, unless the Secretary determines that there is no feasible nonmotorized means of transporting boats across the portages listed above, he shall terminate all such motorized use of each portage listed above.
 
 
 5
 In June 1986, the Forest Service completed the Plan for the Superior National Forest authorizing the continued motorized operation of Prairie Portage, Four Mile Portage, and Trout Lake Portage. The Plan concluded that the portages should remain open to motorized operation because it was not "feasible" to use nonmotorized portage wheels to move the boats across the portages.
 
 
 6
 The Friends brought an administrative appeal challenging the continued use of the motorized portages. In March 1989, the Chief determined that there was no "feasible" alternative to cross Prairie Portage, but that there was no finding as to feasibility concerning Four Mile or Trout Lake portages.
 
 
 7
 At that time, the Chief determined that "feasible" as used in the Wilderness Area Act meant "possible, not ideal or most practical." The Chief had directed the closing of the Four Mile and Trout Lake Portages and ordered study of nonmotorized portaging on all three portages. Six days later, the Chief issued a memorandum delaying the closure of the Trout Lake and Four Mile portages pending a feasibility study. The Friends contend that this reversal of policy was prompted by a telephone call that the Chief received from Representative Jim Oberstar. After the feasibility study was completed, the Chief considered the results and determined that though portaging by nonmotorized means could be done, it was not feasible in light of the risks to health and safety of the portagers. The Chief ruled that all three motorized portages should remain open indefinitely.
 
 
 8
 The Friends then filed suit challenging the Chief's decision. The district court held that the Wilderness Area Act was ambiguous and that the Chief's determination was a reasonable interpretation of the Act. The Friends appealed, and we reversed. Friends of the Boundary Waters Wilderness v. Robertson, 978 F.2d 1484, 1485 (8th Cir.1992), cert. denied, --- U.S. ----, 113 S.Ct. 2962, 125 L.Ed.2d 662 (1993). We held that the language of the Act was unambiguous, and that the Chief's interpretation was contrary to the proper definition of the term "feasible." Id. at 1487.
 
 
 9
 Following the district court's order requiring the Secretary of Agriculture to terminate the operation of motorized portages across the three sets of lakes and remanding the matter to the Secretary of Agriculture to take actions necessary to comply with existing laws, the Friends applied for $72,973.68 in costs and attorney's fees under the Equal Access to Justice Act, 28 U.S.C. Sec. 2412(d) (1988). The district court denied the Friends' request for attorney's fees, reasoning that Congress' silence as to what it meant by "feasible," made it impossible to conclude that the Secretary's interpretation was not substantially justified, even though this court found it to be erroneous. In reaching this conclusion, the district court relied upon its earlier opinion as well as Judge Magill's dissent. Friends of the Boundary Waters v. Robertson, 978 F.2d at 1489.
 
 B.
 
 10
 The district court also ruled upon the Friends' application for attorney's fees on the below-cost timber sales issue. The 1986 Management Plan for the Superior National Forest increased timber sales during its first ten years of operation by 30%, to 97 million board feet per year. The Friends brought an administrative appeal in which they sought to compel the Forest Service to conduct the legally required analysis before approving or implementing a plan to expand the scale of below-cost timber sales. The Chief agreed that the Superior Forest Plan did not adequately consider the question of below-cost timber sales, and ordered further study on that question. However, the Chief also decided that the Superior Forest Plan would remain in effect during the completion of this study.
 
 
 11
 The Friends then brought suit in 1990 to ensure that no more than 75 million board feet of timber per year would be cut while the Forest Service further evaluated the program. In March 1991, the parties reached a settlement. Under the settlement it was agreed that no more than 85 million board feet of timber would be sold per year until the study's completion.
 
 
 12
 After the settlement, the Friends applied for $76,791.48 in costs and attorney's fees. The district court awarded the Friends the requested attorney's fees holding that the Chief had waived any objection he may have had to the Friends' standing, that the Friends qualified as a prevailing party for the purposes of the EAJA, and that the Chief's position on the below-cost timber sales issue was not substantially justified.
 
 I.
 
 13
 The Friends contend that the district court abused its discretion when it concluded that the Chief's position on the portage issue was substantially justified and that the Friends were not entitled to attorney's fees under the EAJA. We reverse a district court decision not to award fees under the EAJA only for an abuse of discretion. Sec. Exch. Comm'n v. Comserve Corp., 908 F.2d 1407, 1411 (8th Cir.1990). In applying this standard, we review the district court's conclusions of law de novo and reject findings of fact only if they are clearly erroneous. Id.
 
 
 14
 The EAJA provides that "a court shall award to a prevailing party other than the United States fees and other expenses, ... unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. Sec. 2412(d)(1)(A). The Chief bears the burden of proving that his position is substantially justified. Sec. Exch. Comm'n v. Kluesner, 834 F.2d 1438, 1440 (8th Cir.1987). In order for the Chief to prevail he must show that his position was "clearly reasonable, well founded in law and fact, solid though not necessarily correct." Id. (quoting United States v. 1,378.65 Acres of Land, 794 F.2d 1313, 1318 (8th Cir.1986)) (emphasis in original); see Pierce v. Underwood, 487 U.S. 552, 565, 108 S.Ct. 2541, 2550, 101 L.Ed.2d 490 (1988) (in order for the government's position to be substantially justified it must be "justified to a degree that could satisfy a reasonable person" and have a "reasonable basis both in law and fact."). The Chief has failed to meet this burden and the district court abused its discretion in concluding that the Chief was substantially justified.
 
 
 15
 In concluding that the Chief's position was substantially justified, the district court relied too heavily upon its original opinion and Judge Magill's dissent from our decision reversing that opinion. The most powerful indicator of the reasonableness of an ultimately rejected position is a decision on the merits and the rationale which supports that decision. United States v. Paisley, 957 F.2d 1161, 1167 (4th Cir.), cert. denied, --- U.S. ----, 113 S.Ct. 73, 121 L.Ed.2d 38 (1992). The views of the district court and dissenting judges are properly considered when conducting this inquiry. EEOC v. Clay Printing Co., 13 F.3d 813, 816 (4th Cir.1994). However, in the present case, our conclusion that the Chief's position was plainly contrary to existing law counsels so strongly against the conclusion that the Chief's position was substantially justified that it must determine the outcome. See id. at 816 (concluding that there was no substantial justification despite a dissent from the court of appeals decision); Thomas v. Peterson, 841 F.2d 332, 336 (9th Cir.1988) (concluding that there was no substantial justification despite divergent views of the district court and the court of appeals).
 
 
 16
 An examination of this court's reasoning in rejecting the Chief's interpretation of the statute demonstrates that the Chief's position was not substantially justified. The Chief contended that "feasible," as the term was used in the statute, meant "reasonable," "practicable," or "likely," and relied heavily on the findings of the study with respect to safety and health of the portagers. Friends of the Boundary Waters v. Robertson, 978 F.2d at 1486. However, we held that "[i]n applying the clearly expressed intent of Congress, we can only conclude that 'feasible' means 'capable of being done' or 'physically possible,' and as a matter of law the Chief erred in ordering that the portages remain open." Id. at 1488. We concluded that the Supreme Court had considered the definition of feasible on two previous occasions and that "the Chief's definition of 'feasible' was overly restrictive and contrary to clear congressional intent and the plain meaning of the word 'feasible.' " Id. at 1487. We cannot hold the Chief's position to be "clearly reasonable" or "well founded in law and fact," in light of our unequivocal rejection of the Chief's position as being contrary to existing law and clear congressional intent.
 
 
 17
 It is also significant that the Chief originally interpreted the statute in a manner consistent with our holding. The Chief first determined that "feasible" meant "possible," not "ideal" or "most practical," but later revised his interpretation. The Friends contend that the Chief's reversal of policy was the result of political influence. However, the Chief asserts that he did not reverse policy but merely "refined his definition of 'feasible' in light of the factual findings in the Portage Report." Accepting the Chief's explanation as to why he abandoned his original interpretation, we still conclude that he was not substantially justified in doing so. The question before the Chief was one of statutory interpretation, and should not have turned upon the outcome and findings of the feasibility study, but rather existing law and congressional intention. Therefore, we hold that the district court abused its discretion in concluding that the Chief was substantially justified.
 
 II.
 
 18
 On cross-appeal, the Chief argues that the district court erred in awarding fees to the Friends on the below-cost timber sales issue. The Chief contends that the Friends lacked standing to sue. Alternatively, the Chief argues that the district court erred in awarding the Friends attorney's fees for time spent in the Forest Service's administrative appeal process.[1]
 
 
 19
 The magistrate judge in his report and recommendation concluded that the Friends established standing for the purposes of the EAJA. The report also stated that by settling the lawsuit, the Chief had waived any further challenge to the Friends' standing. Although the district court declined to adopt the magistrate's finding that "[the Friends' members] live, study, and recreate in the public lands at issue,"[2] he adopted the magistrate's report in all other respects, which includes the magistrate's conclusion that "the Friends had established standing for the purposes of EAJA." Furthermore, the district court held that the Chief had waived any objection to the Friends' standing by opting to settle the case.
 
 
 20
 The Chief argues that "standing relates to the justiciability of a case and cannot be waived by the parties," Sierra Club v. Robertson, 28 F.3d 753, 757 n. 4 (8th Cir.1994), and that "an appellate court must vacate an award of [EAJA] attorney's fees if the district court did not have subject matter jurisdiction over the litigation." Greater Detroit Resource Recovery Authority v. United States Envtl. Protection Agency, 916 F.2d 317, 320 (6th Cir.1990); see also Keene Corp. v. Cass, 908 F.2d 293, 298 (8th Cir.1990) (applying same reasoning under a different fee-shifting statute). The Chief's position is supported in both instances, and the district court erred in concluding that the Chief had waived any objections to standing.
 
 
 21
 Both parties have briefed the standing issue on the merits. In their First Amended Complaint, the Friends made allegations in an attempt to establish standing. The Chief filed a motion for summary judgment challenging the Friends' standing, and the Friends filed a cross-motion for summary judgment and submitted affidavits from their members in support of their allegations of standing. The Chief filed no affidavits or other factual material which contradicts the affidavits, but attacks only the sufficiency of the Friends' affidavits.
 
 
 22
 Our examination of the affidavits leads us to conclude that the affidavits sufficiently establish the three elements of constitutional standing under Article III which are: injury in fact, traceability, and redressability. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 559-61, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992) (summarizing the requirements of standing). The Chief argues that the affidavits fail to establish injury in fact or redressability. The Friends members' affidavits are replete with allegations of the injuries that would result from the Plan's proposed increase in below-cost timber sales. The district court adopted the magistrate's finding that the expanded timber sales damaged tree species and age class diversity. In addition, the affidavits assert that the injuries would be redressed by returning below-cost timber sales to their pre-Plan levels. Therefore, we find no defect in the Friends' standing.
 
 
 23
 Additionally, the Chief argues that our holding in Sierra Club v. Robertson, 28 F.3d at 758, requires that we conclude that the Friends lack standing. In Sierra Club v. Robertson, this court held that the Ouachita Forest Plan did not produce an imminent injury in fact, because the plan was only a general planning tool for decisions to be made in ten to fifteen years, and the adoption of the plan did not effectuate any on the ground environmental changes. Id. at 758. The Plan at issue in this case is readily distinguishable from the one at issue in Sierra Club v. Robertson, in that it explicitly provided for an expansion of timber sales over pre-Plan levels and specifically identified the location where the timber would be harvested.
 
 
 24
 Next, the Chief argues that the district court erred in awarding the Friends attorney's fees for time spent in the Forest Service's administrative appeal process. The EAJA allows parties to recover fees in judicial review of any "adversary adjudication." 28 U.S.C. Sec. 2412(d)(3). The Chief contends that the Friends' administrative appeal did not qualify as an "adversary adjudication" under 5 U.S.C. Sec. 504(b)(1)(C) (Supp. V 1993), as required by the EAJA. Id.
 
 
 25
 In reviewing an EAJA request for fees incurred in administrative proceedings, "the adversarial nature of the proceedings is irrelevant." Pollgreen v. Morris, 911 F.2d 527, 534 (11th Cir.1990). "[W]here administrative proceedings are intimately tied to the resolution of the judicial action and necessary to the attainment of the results Congress sought to promote by providing for fees, they should be considered part and parcel of the action for which fees may be awarded." Sullivan v. Hudson, 490 U.S. 877, 888, 109 S.Ct. 2248, 2256, 104 L.Ed.2d 941 (1989). Thus, the determinative issue is whether the administrative proceedings were "crucial to the vindication of [the Friends'] rights." Id. at 889, 109 S.Ct. at 2256 (quoting Pennsylvania v. Delaware Valley Citizens Council for Clean Air, 478 U.S. 546, 561, 106 S.Ct. 3088, 3096, 92 L.Ed.2d 439 (1986)); see also Pollgreen, 911 F.2d 527, 534.
 
 
 26
 Both the D.C. and Eleventh Circuits have concluded that Hudson's holding is limited to cases in which there is a post-litigation remand for further administrative proceedings. Full Gospel Portland Church v. Thornburgh, 927 F.2d 628, 631 (D.C.Cir.1991), cert. denied, 502 U.S. 1030, 112 S.Ct. 867, 116 L.Ed.2d 773 (1992); Pollgreen, 911 F.2d at 527, 535. The courts concluded that pre-litigation administrative proceedings do not have the "requisite ancillary relationship with the judicial action," to permit a reward of fees under Hudson. Pollgreen, 911 F.2d at 527; Full Gospel, 927 F.2d at 631-32 (pre-litigation administrative proceedings do not create the requisite degree of direct interaction between a federal court and an administrative agency to justify an award of fees).
 
 
 27
 In Hudson, the EAJA applicant sought attorney's fees for administrative proceedings on remand to the Social Security Administration from a district court. In holding that the proceedings were "crucial to the vindication of [the plaintiff's] rights," the Court pointed out two problems created by remands for post-litigation administrative proceedings. Hudson, 490 U.S. at 889, 109 S.Ct. at 2256-57. First, "where a court's remand to the agency for further administrative proceedings does not necessarily dictate the receipt of benefits, the claimant will not normally attain 'prevailing party' status within the meaning of Sec. 2412(d)(1)(A) until after the result of the administrative proceedings is known." Id. at 886, 109 S.Ct. at 2255. Second, the EAJA requires that applications for fees be filed "within thirty days of final judgment," and when cases are remanded for further administrative proceedings "there will often be no final judgment in a claimant's civil action for judicial review until the administrative proceedings on remand are complete." Id. at 887, 109 S.Ct. at 2255. These problems do not arise in cases, such as the case now before us, where the administrative proceedings precede the civil action. Thus, there is no basis for extending Hudson's holding to this case.
 
 
 28
 The EAJA amounts to a partial waiver of the government's sovereign immunity, and, as such, must be strictly construed in the government's favor. Ardestani v. Immigration and Naturalization Serv., 502 U.S. 129, 135-37, 112 S.Ct. 515, 520, 116 L.Ed.2d 496 (1991). Accordingly, Hudson's interpretation of the EAJA should be narrowly applied. Thus, we conclude that the district court abused its discretion in holding that the Friends' administrative proceedings were "crucial to the vindication of [their] rights."
 
 
 29
 The Friends contend that the administrative proceedings were "crucial to the vindication of their rights" for two reasons: 1) they were required to exhaust all of their administrative remedies before bringing an action in the district court challenging the Forest Service's rulings, or else risk forfeiting their claims, Sierra Club v. Robertson, 28 F.3d at 757; and 2) the record that they developed in the administrative proceedings played an integral role in their civil action. Although these arguments have persuasive force, we feel constrained to apply Hudson narrowly.
 
 
 30
 For the foregoing reasons, we affirm the award of fees on the below-cost timber sales issue, but only with respect to fees incurred during the Friends' civil action. We reverse and remand for an award of fees on the portage issue.
 
 
 
 [1]
 The Chief also argues that the Friends' EAJA application is premature and the district court therefore lacked jurisdiction to award attorney's fees. This court has previously considered and rejected this argument on the Chief's motion for a stay of the briefing schedule and a limited remand. See Friends of the Boundary Waters Wilderness v. Thomas, No. 94-1794 (8th Cir. Aug. 18, 1994) (order denying motion for stay of briefing schedule and a limited remand). Therefore, we decline to address the argument
 
 
 [2]
 The Chief mischaracterizes the district court's order in saying that the district court rejected the Friends' contention that they "live, study and recreate in the public lands at issue ... and there is no question of ongoing use of the area." The district court did not reject this contention, but merely declined to adopt that portion of the magistrate's report. The district court made no factual determination on the issue, but presumably found it unnecessary to reach the issue because of his reliance on his holding that any objections to standing had been waived