MINNESOTA CITIZENS CONCERNED
FOR LIFE, INC. and Elizabeth A.
Blosser, Plaintiffs,

v.

FEDERAL ELECTION COMMISSION
and Janet Reno, Defendants.

Civil No. 3–95–1147.

United States District Court,
D. Minnesota,
Third Division.

April 19, 1996.

James Bopp, Jr., Paul R. Scholle, Bopp, Coleson & Bostrom, Terre Haute, IN, and Frank J. Walz, Best & Flanagan, Minneapolis, MN, for Plaintiffs.

Lawrence M. Nobel, Richard B. Bader, Stephen E. Hershkowitz and Kenneth E. Kellner, Office of the General Counsel for the Federal Election Commission, Washington, D.C., for Defendant Federal Election Commission.

Lonnie F. Bryan, Assistant United States Attorney, United States Attorneys Office, Minneapolis, MN, for Defendant Janet Reno.

## MEMORANDUM OPINION AND ORDER

KYLE, District Judge.

### Introduction

This matter is before the Court on Plaintiffs Minnesota Citizens Concerned for Life, Inc. ("MCCL") and Elizabeth A. Blosser's ("Blosser") Consolidated Motion for a Preliminary Injunction and Trial on the Merits,[1] and Defendant United States Attorney General Janet Reno's ("Attorney General") Motion to Dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.[2] MCCL[3] commenced this action challenging regulations Defendant Federal Election Commission (the "Commission") promulgated pursuant to the Federal Election Campaign Act of 1971, as amended, (the "Act" or the "FECA"), 2 U.S.C. §§ 431–455. These regulations, found at 11 C.F.R. § 114.10, define an exemption to the Act's prohibition against the use of corporate funds to influence federal elections. MCCL claims these regulations violate the First Amendment and the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 551–706.

A hearing on MCCL's Consolidated Motion was held before the undersigned on March 11, 1996. At the hearing, the Commission moved (1) to engage in additional discovery; (2) to file the complete administrative rulemaking record relative to 11 C.F.R. § 114.10; (3) to strike the Affidavit of Jacqueline A. Schwietz, MCCL's Co–Executive Director; and (4) to file supplemental

---

1. MCCL initially moved this Court for a preliminary injunction prohibiting the Commission and the Attorney General from enforcing § 114.10. MCCL subsequently moved to consolidate its motion for a preliminary injunction with a trial on the merits of its claims. The Court granted this motion.

2. At argument, MCCL acknowledged that, since the Court consolidated MCCL's Motion for a Preliminary Injunction with a trial on the merits, Reno was no longer a necessary party to this action and her Motion to Dismiss should be granted. The Court will accordingly not address the issues raised in that Motion.

3. The Court will refer to Plaintiffs MCCL and Blosser collectively as "MCCL" except where otherwise noted.

briefing on the merits of MCCL's claims. The Court granted the Commission's motion to file supplemental briefing on the merits and denied the remainder of its motions.

The Court is currently in receipt of the Commission's supplemental brief and MCCL's response thereto. The Commission has also re-filed motions to engage in additional discovery, to file the complete administrative record pertaining to 11 C.F.R. § 114.10, and to strike the Affidavit of Jacqueline A. Schwietz. This Memorandum Opinion and Order follows.

## Background

### I. Parties

MCCL is a nonprofit corporation organized under Minnesota law. MCCL's purpose is "to educate the public through the presentation of detailed and factual information about fetal development, abortion, alternatives to abortion, infanticide, euthanasia and related issues." (Am.Compl. ¶ 10.) In accordance with this purpose, MCCL claims it makes expenditures for communications and publications such as a newsletter, candidate surveys and voter guides. (Id. ¶ 16.) Blosser is a resident of Minnesota; she is not a member of MCCL but claims the regulations challenged in this case impair her ability to receive information contained in MCCL's communications. (Id. ¶¶ 5, 55.)

The Commission is an independent agency of the United States Government empowered to administer, interpret, enforce, and make such rules as are necessary to implement the FECA. 2 U.S.C. §§ 437c(b)(1), 437d(1) and 437g.

The Attorney General is charged under the FECA with the enforcement of certain penal provisions of the FECA and is empowered to receive reports of apparent FECA violations from the Commission and to take appropriate action; she is sued in her official capacity. See 2 U.S.C. § 437g.

### II. FECA Regulations

The regulations challenged in this case were promulgated pursuant to FECA § 441b. This section prohibits corporations and labor organizations from using general treasury funds[4] to make a "contribution or expenditure in connection with any [federal] election." 2 U.S.C. § 441b(a). In *Federal Election Comm'n v. Massachusetts Citizens for Life, Inc.*, 479 U.S. 238, 107 S.Ct. 616, 93 L.Ed.2d 539 (1986) ("*MCFL*"), the Supreme Court placed a limiting construction on § 441b's campaign spending restrictions; it held that § 441b's prohibition against the use of corporate general treasury funds to make independent campaign expenditures was unconstitutional as applied to MCFL, a small nonprofit corporation,[5] because this restriction "infringe[d] protected speech without a compelling justification for such infringement." *Id.* at 263, 107 S.Ct. at 630. The Supreme Court observed MCFL had the following three features "essential" to its holding:

(1) it was formed for the express purpose of promoting political ideas, and [could not] engage in business activities.

(2) it has no shareholders or other persons affiliated so as to have a claim on its assets or earnings.

(3) [it] was not established by a business corporation or a labor union, and it is its

---

**4.** Section 441b distinguishes between "general treasury funds" and "separate segregated funds"; monies from bona fide "separate segregated funds" may be used to make contributions and expenditures in connection with federal elections. See 2 U.S.C. § 441b(b)(4)(B). A "separate segregated fund" consists of contributions solicited from the corporation's stockholders, executive and administrative personnel, and employees (or families of those persons) under conditions specified by the statute. See id. §§ 441b(b)(2)(C), (b)(4)(A)(i), (b)(4)(B). Expendi-

tures from a "separate segregated fund" are not at issue in this case.

**5.** MCFL shares certain characteristics with MCCL. In particular, MCFL made certain campaign expenditures consistent with its corporate purpose to "foster respect for human life and to defend the right to life of all human beings, born and unborn, through educational, political and other forms of activities ..." and claimed that § 441b infringed upon its First Amendment right to make such expenditures. See MCFL, 479 U.S. at 241–42, 107 S.Ct. at 619.

policy not to accept contributions from such entities.

*Id.* at 263–64, 107 S.Ct. at 631.

The Supreme Court's description of these three features forms the basis for 11 C.F.R. § 114.10, the regulation at issue in this case. *See* 60 Fed.Reg. 35,292, 35,293 (July 6, 1995) (explaining that the "new section 114.10 has been added to implement the *MCFL* Court's conclusion that nonprofit corporations possessing certain essential features may not be bound by the restrictions on independent expenditures contained in section 441b.") Section 114.10 establishes requirements a nonprofit corporation must satisfy to be exempt from § 441b's prohibition against corporate campaign expenditures. Section 114.10 provides that an entity will not be a "qualified nonprofit corporation" and will be bound by § 441b's spending restrictions unless, *inter alia:*

(1) its only express purpose is the promotion of political ideas and it does not engage in any *"business activities"*;

(2) its members are not offered and do not receive any benefit which "is a disincentive from them to disassociate the corporation on the basis of the corporation's position on a political issue," including credit cards; and

(3) it "does not directly or indirectly accept donations of anything of value from business corporations, or labor organizations."

11 C.F.R. § 114.10(c)(1)–(5). With respect to this first requirement, the regulations further provide:

(i) The term *business activities* includes but is not limited to:

(A) Any provision of goods or services that results in income to the corporation; and

(B) Advertising or promotional activity which results in income to the corporation, other than in the form of membership dues or donations.

(ii) The term *business activities* does not include fundraising activities that are ex-

pressly described as requests for donations that may be used for political purposes, such as supporting or opposing candidates. 11 C.F.R. § 114.10(b)(3)(i) and (ii).

In addition to defining a "qualified nonprofit corporation," § 114.10(e) and (f) impose certification and reporting requirements "qualified nonprofit corporations" must satisfy in order to retain their exempt status. Specifically, § 114.10(e) provides in pertinent part:

(1) *Procedure for demonstrating qualified nonprofit corporation status.* If a corporation makes independent expenditures ... that aggregate in excess of $250 in a calendar year, the corporation shall certify that it is eligible for an exemption from the prohibition against corporate expenditures contained [in this section]. ...

(ii) This certification may be made either as part of a filing FEC Form 5 .... or by submitting a letter [which] certif[ies] that the corporation has the characteristics [of a "qualified nonprofit corporation"] set forth in [§ 144.10] paragraphs (c)(1) through (5).

(2) *Reporting independent expenditures.* Qualified nonprofit corporations that make independent expenditures aggregating in excess of $250 in a calendar year shall file reports as required by 11 C.F.R. § 109.2.

Section 114.10(f) provides in pertinent part:

*Solicitation; disclosure of use of contributions for political purposes.* Whenever a qualified nonprofit corporation solicits donations, the solicitation shall inform potential donors that their donations may be used for political purposes, such as supporting or opposing candidates.

Each of these requirements is challenged in this case.

### III. MCCL

MCCL claims it has the following pertinent characteristics with respect to the regulations at issue:

● MCCL has approximately 32,500 members[6] and 160 local chapters throughout Minnesota;

---

**6.** MCCL defines its "members" as "persons who have made a financial contribution to MCCL in

the past two years." (Am.Compl. ¶ 8.)

● No part of MCCL's net earning inures to the benefit of any private shareholder or individual;

● MCCL has no capital stock;

● Except for "reasonable compensation for services rendered to it," MCCL does not afford pecuniary gains to its members, directors, officers or any other persons;

● MCCL offers its members the opportunity to obtain "affinity" credit cards;

● The majority of MCCL's funding comes from individual donations;

● MCCL does not have a written policy against accepting contributions from business corporations into its "general fund" and in fact accepts such contributions in an amount which is "insignificant" in relation to the total contributions received by MCCL during the year[7];

● MCCL engages in traditional fundraising activities of nonprofit organizations and in incidental business activities related to its advocacy of issues, such as selling advertisements in its newsletter; renting its membership list; conducting bake, wreath and corsage sales; and seeking donations through direct mail, telemarketing and major gift solicitations.[8] MCCL does not expressly describe its fundraising activities as requests for donations which may be used for political purposes, such as supporting or opposing candidates.

(Am.Compl. ¶¶ 8–15; Schwietz Aff. ¶¶ 14–17.)

*IV. MCCL's claims*

MCCL has alleged six related causes of action asserting that the regulations set forth in § 114.10 are "in excess of the statutory authority" of the Commission and thus void under 5 U.S.C. § 706[9]: *Count 1* alleges that § 114.10 exceeds the limiting construction to § 441b imposed by the Supreme Court in *MCFL; Count 2* alleges that the certification requirement imposed by § 114.10(e) exceeds statutory reporting requirements contained in 2 U.S.C. § 434(c)(1) and (2); *Count 3* alleges that the Commission does not have authority to impose the disclosure requirement contained in § 114.10(f) because this requirement exceeds the conditions Congress authorized it to establish; *Count 4* alleges that the disclosure requirement imposed by § 114.10(f) constitutes an unconstitutional infringement on speech; *Count 5* alleges that § 114.10(b)(3)(ii)'s required fundraising disclosures constitute an unconstitutional infringement on speech; and *Count 6* alleges that § 114.10 chills MCCL's ability to engage in free speech and thus violates Blosser's First Amendment right to receive constitutionally protected political information.

MCCL accordingly seeks (1) a declaration that § 114.10 is in excess of the Commission's authority, void under 5 U.S.C. § 706, and unconstitutional "in that it infringes Plaintiff … Blosser's right to receive information"; (2) a declaration the § 114.10(f) "is unconstitutional in that it constitutes a content based restriction on speech which is not narrowly tailored to serve an overriding [governmental] interest" and (3) an order enjoining Defendants from enforcing § 114.10. (Am.Compl. at 11.)

---

7. MCCL has provided evidence that business contributions, corporate or otherwise, accounted for 1.43% of its total donations in 1991, 0.98% of its total donations in 1992, 1.20% of its total donations in 1993, 1.94% of its total donations in 1994; 0.98% of its total donations in 1995. (Schwietz Aff. ¶¶ 5–9.) These figures are supported by MCCL financial statements appended as Exhibit A to Schwietz's Affidavit. The Commission contests these figures and sought to verify these figures through discovery. For the reasons set forth *infra,* the Court will adhere to its decision not to permit additional discovery in this matter; the Court need not make a factual finding that these figures are accurate in order to resolve MCCL's claims.

8. MCCL has provided evidence that, between 1991–1995, the percentages of general fund reve-

nues attributable to sales of advertising space in its newsletters were as follows: 1991—0.0%; 1992—0.9366%; 1993—0.0%; 1994—0.9145%; and 1995—0.0%. (Schwietz Aff. ¶ 11; *id.,* Ex. A.). MCCL has also provided evidence that, between 1991–1995, the percentages of general fund revenue attributable to the rental of MCCL's membership list were as follows: 1991—0.4327%; 1992—2.8257%; 1993—0.0%; 1994—2.1581%; and 1995—0.0%. (*Id.* ¶ 13.)

9. 5 U.S.C. § 706 requires a reviewing court to "hold unlawful and set aside agency action, findings, and conclusions found to be … contrary to constitutional right, power, privilege, or immunity."

## Discussion

■ Based on the allegations contained in its Verified Amended Complaint, MCCL clearly does not meet the requirements of a "qualified nonprofit corporation" as defined in § 114.10(c). MCCL engages in FECA "business activities" under § 144.10(c)(2) because it sells advertising in its newsletter, rents its membership list, and engages in fundraising activities that are not expressly described as "requests for donations that may be used for political purposes." *See* 60 Fed.Reg. 35,292 at 35,298 (July 6, 1995) (explaining that "a corporation that publishes a newsletter or magazine and sells advertising space in that publication will be engaging in business activities, and will not be a qualified nonprofit corporation"). MCCL also allows members to obtain "affinity" credit cards, which the Commission views as an impermissible benefit under § 114.10(c)(3)(ii). *See id.* at 35,300 ("credit cards ... will be considered disincentives to disassociate. Consequently, corporations that offer such things as affinity credit cards ... will not be qualified nonprofit corporations"). Finally, MCCL accepts corporate business donations prohibited by § 114.10(c)(4)(ii). *See id.* at 35,301 ("knowingly accepted prohibited donations will void a corporation's exemption, even if the corporation accepts only a *de minimis* amount"). As is clear from the regulations and the Commission's commentary, each of these facets of MCCL's activities will disqualify it from an exemption to federal campaign spending restrictions. *See id.* at 35,298 ("[c]orporations that do not have *all* of [§ 114.10(c)'s] characteristics are not qualified nonprofit corporations, and are therefore bound by the independent expenditure prohibition" (emphasis added).)

### I. *Analysis*

#### A. *Caselaw*

The Commission promulgated § 114.10 in an attempt to define the scope of the "qualified nonprofit" exemption the Supreme Court established in *MCFL*, and relied upon the Supreme Court's discussion of MCFL's three features "essential" to its holding. (*See supra* at pp. 635–636). The Commission considered two interpretations of *MCFL* when drafting this definition: (1) a formal interpretation and (2) a functional interpretation.[10] As is clear from § 114.10, the Commission adopted a formal interpretation and read *MCFL* as establishing a strict, "bright-line" constitutional test corporate nonprofits must satisfy to qualify for the § 441b exemption.

The Eighth Circuit specifically rejected this interpretation of *MCFL* in *Day v. Holahan*, 34 F.3d 1356 (8th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 936, 130 L.Ed.2d 881 (1995). In *Day*, MCCL—the same entity as in this case—challenged the "nonprofit exemption" contained in Minnesota's campaign finance legislation. Minnesota modeled its exemption on the three condi-

---

**10.** The Commission does not use the terms "formal" and "functional." However, the Commission's commentary to § 114.10 makes clear these were the two approaches it considered.

For example, with respect to engaging in corporate business activities, the Commission stated "commentators objected to a complete prohibition on business activities ... arguing that the presence of minimal business activities would not have changed the result in *MCFL*"; the Commission rejected this approach and concluded that "the plain language of the *MCFL* opinion endorses a complete prohibition on business activities." 60 Fed.Reg. 35,292, 35,299 (July 6, 1995).

With respect to "members" acceptance of benefits from the subject nonprofit, the Commission stated "commentators ... recommended that a substantiality test be used, so that benefits that are insubstantial or create an insignificant disin-

centive to disassociate would not disqualify the corporation"; the Commission rejected this test, stating "the Commission has decided against including a substantiality test for benefits that ostensibly create a less significant disincentive to disassociate with the corporations. Any disincentive, no matter how small," would be prohibited. *Id.* at 35,300.

And with respect to corporate business donations, the Commission stated "[m]ost of the commentators objected to an absolute ban on the acceptance of business corporation and labor organizations donations ... suggest[ing] the Commission engage in factual analyses to determine whether an organization is under the influence of a business corporation" or adopt a *"de minimis* test"; the Commission rejected these suggestions and concluded "knowingly accepted prohibited donations will void a corporation's exemption, even if the corporation accepts only a *de minimis* amount." *Id.* at 35,300–301.

tions the Supreme Court set out in *MCFL*. *Id.* at 1363 (explaining that "[t]he Minnesota legislature looked at three features of MCFL that, in the Supreme Court's view, qualified MCFL for exemption, and translated them into requirements for exemption under Minnesota law"). Minnesota's exemption provided that a nonprofit corporation was exempt from state campaign expenditure limitations if that corporation:

(1) [could] not engage in business activities;

(2) has no shareholders or other persons affiliated so as to have a claim on its assets or earnings; and

(3) was not established by a business corporation or labor union and has a policy not to accept significant contributions from those entities.

*See id.* at 1363 (quoting Minn.Stat. § 211B.15, subd. 15). MCCL alleged this exemption was too restrictive and accordingly infringed upon its First Amendment rights to make campaign expenditures and engage to in other protected speech.

In defending its exemption, Minnesota, like the Commission, construed *MCFL* as requiring literal compliance with the three "essential" characteristics noted in *MCFL* and incorporated into the Minnesota statute. *See id.* ("[t]he state claims that, because MCCL's activities did not strictly conform to the statute (MCCL engages in incidental business activities and has no policy of refusing significant contributions from corporations), MCCL is not exempt from the prohibitions of section 211B.15"). The Eighth Circuit unequivocally rejected Minnesota's construction of *MCFL* and the "formal" approach to the qualified nonprofit exemption, stating:

the conditions that nonprofit corporations must meet to qualify for the exemption were taken from the Minnesota legislature's reading of the Supreme Court's opinion in *MCFL*. But the analysis in *MCFL*, upon which section 211B.15, subd. 15 was based, is not a constitutional test for when a nonprofit corporation must be exempt. Instead, it is an application, in three parts, of First Amendment jurisprudence to the facts in *MCFL*. The state goes too far in concluding that the factual findings of *MCFL* translate into absolutes in legal application.

*Day*, 34 F.3d at 1363 (emphasis added); *see also id.* at 1364 (stating the Court must "look[ ] to the purpose of ... [the] exemption and the facts here, rather than merely the factual application in *MCFL*"); *id.* (stating the Court must "consider the purpose underlying the Supreme Court's conclusion.... rather than relying on the factual finding itself").

*Day* held Minnesota's restrictions unconstitutional as applied to MCCL and that MCCL qualified for exempt nonprofit status. *Id.* at 1365. In reaching this conclusion, *Day* observed that MCCL would not qualify for Minnesota's exemption because it engaged in minor business activity such as renting its mailing list and selling advertisements in its newsletter, and because it did not have a policy against accepting "significant" corporate contributions. *Id.* at 1364.

The Second Circuit has recently adopted *Day*'s construction of *MCFL* and rejected the formalist approach presently advocated by the Commission. In *Federal Election Comm'n v. Survival Educ. Fund., Inc.*, 65 F.3d 285 (2nd Cir.1995), the Second Circuit considered whether the defendant nonprofit corporation was entitled to the § 441b exemption even though it received contributions from business corporations. The Commission barred the defendant nonprofit from receiving the exemption because it received corporate contributions, and commenced a civil action against it for violating § 441b. The district court granted the defendant's summary judgment motion and deemed defendant eligible for the exemption.

On appeal, the Commission argued, as it does here, that "only an absolute policy against accepting contributions from business corporations and labor unions would guarantee that a nonprofit group ... would not abuse its corporate form." *Id.* at 291. The Second Circuit disagreed, stating:

[w]e think the FEC misunderstands the nature of *MCFL*.... [This] decision[ ] involve[s] as-applied First Amendment challenges to elections laws. The Court's listing of the factors essential to its holding on

the facts of a particular case does not impose a code of compliance that other nonprofit corporations must follow to the letter. *Id.* The Second Circuit adopted *Day*'s functional approach to *MCFL* and explained "[w]e agree with the analysis in *Day*. The rigidity with which the FEC would have us apply *MCFL* would impoverish political debate." *Id.* at 292. The Second Circuit accordingly affirmed the district court and held the defendant nonprofit was entitled to the § 441b exemption.

### B.   Application

The Commission recognizes that its interpretation of *MCFL* conflicts with the Eighth Circuit's as set forth above.[11] The Commission argues that this case is distinguishable from *Day* because the Commission did not contest MCCL's assertions regarding the extent of its business activities or the amount of corporate funding it received in *Day*.[12] In this case, the Commission contests these assertions. The Commission accordingly claims: (1) MCCL has not proven it would qualify for an exemption under the *Day* analysis and thus does not have standing to challenge the regulations; (2) the Court should not rule on MCCL's claims until the Commission has an opportunity to build a factual record to support its regulations; and, alternatively, (3) if the Court finds MCCL's claims are governed ·by *Day*,

§ 114.10(f) is severable from the remainder of § 114.10.

### 1.   Standing

■ In order to demonstrate it has standing in this matter, MCCL must show: (1) it has suffered or will suffer an injury in fact, (2) there is a causal connection between this injury and the challenged regulations, and (3) it must be likely that the injury will be redressed by a favorable decision. *See Friends of the Boundary Waters Wilderness v. Thomas*, 53 F.3d 881, 886 (8th Cir.1995) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559–61, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992)).

■ The Commission has not specifically challenged the first two standing requirements. Nor would such a challenge be successful. MCCL seeks to make campaign expenditures on behalf of its members to support it philosophical position. Such independent expenditures constitute expression "at the core of our electoral process and of the First Amendment freedoms." *Federal Election Comm'n v. Massachusetts Citizens for Life*, 479 U.S. 238, 251, 107 S.Ct. 616, 624, 93 L.Ed.2d 539 (1986) (quotation omitted); *Day*, 34 F.3d at 1360 (recognizing that "[i]t is clear that independent expenditures are protected speech" and that restrictions on independent expenditures also implicate "protected associational freedoms" by im-

---

11. The Commission states that it "does not dispute that the reasoning in *Day* conflicts with the Commission's analysis of *MCFL* and the Commission's regulation governing exemption from the Act's prohibition against corporate independent expenditures." (Comm'n Suppl.Br. at 12). In its commentary to § 114.10, the Commission also remarked:

> The U.S. Court of Appeals decision in *Day v. Holohan [Holahan]*, 34 F.3d 1356 (8th Cir. 1994) does not affect this conclusion. In that case, the Eighth Circuit decided that a Minnesota Statute that closely tracked the Supreme Court's three essential features was unconstitutional as applied to a Minnesota nonprofit corporation. The Commission believes the Eighth Circuit's decision, which is controlling law in only one circuit, is contrary to the plain language used by the Supreme Court in *MCFL*, and therefore is of limited authority.

60 Fed.Reg. 35,292, 35,297 (July 6, 1995). With respect to this commentary, the Court makes only two observations. First, after *Survival Education Fund*, it appears *Day* is now the law in the only two circuit-level courts to address this issue. *But see Federal Election Comm'n v. NRA Political Victory Fund*, 778 F.Supp. 62, 64 (D.D.C.1991) (holding that nonprofit was not entitled to *MCFL* exemption because it did not "state a policy equivalent to that of *MCFL*"), *rev'd on other grounds*, 6 F.3d 821 (D.C.Cir.1993), *cert. dismissed for want of jurisdiction*, —— U.S. ——, 115 S.Ct. 537, 130 L.Ed.2d 439 (1994). Second, and more importantly, *Day* is the controlling law in this Circuit, and, accordingly, for this Court.

12. *Day* concluded that MCCL's limited business activities were sufficient to qualify it for exempt nonprofit status. *Day* noted, however, that "the state may wish to revisit MCCL's qualification for the exemption" if the amount of revenue MCCL received from its business activities or from business donations materially increased. *Day*, 34 F.3d at 1365. The Commission's current argument is premised on this dicta.

pairing the ability of like-minded people "to pool their resources in furtherance of common political goals") (citations and quotations omitted). Infringement of this protected speech is thus an "injury in fact" for standing purposes. There is no question the challenged regulations specifically restrict MCCL's ability to make these expenditures. As a result, the constitutional "injury in fact" and "causation" requirements are satisfied.

The more complicated issue is the "redressability" requirement, upon which the Commission focuses. It argues that MCCL does not have standing because MCCL has not demonstrated it would qualify for exemption under the standard the Commission claims was "established" in *Day*, and thus "would receive no benefit from a ruling that the Commission is required to accept the *Day* standard." (Comm'n Suppl.Br. at 3.) The Commission has accordingly moved to strike the Affidavit of Jacqueline Schwietz, which sets forth financial information regarding MCCL's total revenues, the revenues obtained from business donations, and the revenues obtained from advertising in its newsletter. (*See supra,* notes 7 & 8.) The Commission claims these figures are hearsay, have not been authenticated, are impermissibly conclusory, and should not be considered in determining whether MCCL would qualify for an exemption under *Day*.

■ The Commission has misconstrued the standing requirement in this case, the nature of the Eighth Circuit's decision in *Day*, and the relief MCCL seeks in its Verified Amended Complaint. *Day* concluded that Minnesota's nonprofit exemption was unconstitutional "as applied" to MCCL, and that MCCL "should qualify" for an exemption from § 441b. *Day*, 34 F.3d at 1365. In this case MCCL has not sued the Commission seeking a declaration that it is entitled to an exemption from § 441b. Rather, MCCL seeks a declaration that the Commission's regulations are not valid under 5 U.S.C. § 706, which authorizes a court to set aside agency regulations which are unconstitutional. The issue here is not whether MCCL would apply for the § 441b exemption

if the regulations were written differently or were rewritten in accordance with *Day*. The issue in this case is whether the regulations, *as written,* are valid.

Thus MCCL need not demonstrate to this Court that it would qualify for an exemption under *Day* in order to have standing in this case or to succeed on its claims. MCCL must demonstrate the regulations as written impose unconstitutional restrictions on protected speech, and that the relief it seeks—a declaration that these regulations are void—will eliminate these restrictions. Assuming the regulations are unconstitutional, this relief will redress the harm they cause, and MCCL has standing to pursue this litigation. The Court need not and will not determine whether MCCL would qualify for an exemption under its views regarding how § 114.10 might have otherwise been drafted. That is a task for the Commission. Moreover, because the Court has not made a factual finding regarding the financial information contained in Schwietz's Affidavit, the Court will deny the Commission's motion to strike this Affidavit as moot.

### 2. Discovery

■ The Commission claims that the Court may not rule on the constitutionality of the regulations, even accepting the *Day* analysis, because it has not engaged in discovery to determine whether MCCL's business contributions or activities are "significant." The Commission objected to consolidating the Plaintiff's Motion for a Preliminary Injunction with a trial on the merits on this ground and requested during argument—several times—that the Court defer ruling on the merits of MCCL's claims until it conducted discovery and compiled the administrative record. The Court denied these requests. (*See* Tr. dated Mar. 11, 1996 at 23, 28, 29). The Court permitted the Commission to file an additional brief with respect to the merits of MCCL's claims. Notwithstanding the Court's clear instructions, (*id.* at 28) the Commission subsequently filed a motion and brief reiterating its request to conduct discovery and file the administrative record.[13]

---

**13.** The Commission made no attempt to engage in discovery or to submit the administrative rec-

The Court will deny the request to engage in discovery and to file the administrative record. The Commission's motion is predicated on its misconception of this litigation. The Commission seeks additional discovery to show that MCCL would not qualify for the exemption it claims was established in *Day*. As set forth above, however, the issue in this case is whether the regulations as written are valid, not whether MCCL would qualify for a different exemption the Commission might have adopted. Thus additional discovery is not warranted.

Similarly, the Court finds the administrative record is not relevant to resolving the claims in MCCL's Verified Amended Complaint. MCCL claims the challenged regulations constitute an unconstitutional restriction on protected speech. This is purely a legal question for the Court; the administrative record will be of no assistance in resolving this issue. *See Maine Right to Life Comm. v. Federal Election Comm'n,* 914 F.Supp. 8 (D.Me.1996) (denying Commission's motion to file the administrative record to defend the constitutionality of its regulations because the legality of the regulation "derive[ed] from the language of the court decisions, not the administrative record"). As a result, the Court will adhere to its prior ruling and decide this case on the merits based on the material currently presented.[14]

### 3. Effect of Day on the Challenged Regulations

■ *Day* is dispositive of several claims in the present case. Based on *Day*'s interpretation of *MCFL,* § 114.10(c)(2)'s prohibition against any "business activities" and § 114.10(c)(4)(ii)'s prohibition against the re-

ceipt of corporate donations is, unquestionably, too restrictive. *Day* concluded these conditions are not narrowly tailored to serve the purposes of restricting nonprofit independent expenditures. *See id.* at 1362 (citing *Austin v. Michigan Chamber of Commerce,* 494 U.S. 652, 659, 660, 110 S.Ct. 1391, 1397, 108 L.Ed.2d 652 (1990)). Accordingly, at a minimum, these facets of § 114.10(c) are "contrary to a constitutional right" and thus void under 5 U.S.C. § 706.

The more difficult question before the Court is the extent to which *Day* impacts § 114.10 generally. The Minnesota statute considered in *Day* did not disqualify a nonprofit from the exemption if the nonprofit offered "any" benefit to its members which may be a disincentive for members to disassociate themselves from it, such as "affinity credit cards," (*see* § 114.10(3)) and did not require the nonprofit's "only" express purpose to be the promotion of political ideas (*See* § 114.10(1)). Moreover, the Minnesota statute did not impose additional certification, reporting, and disclosure requirements on nonprofits entitled to the exemption. (*see* § 114.10(e) and (f)). MCCL's challenge to § 114.10 includes a First Amendment challenge to these additional provisions.

■ The impact of *Day* is governed by the severability doctrine. Under this doctrine, a statute or regulation which contains unconstitutional provisions must be stricken in its entirety unless (1) that which remains after the unconstitutional provisions are excised is "fully operative as law" and (2) the body enacting the statute or regulation would have enacted the constitutional provisions even in

---

ord between the filing of the Complaint on December 14, 1995 and the argument on the Motion before the Court on March 11, 1996.

14. As a related argument, the Commission and the Attorney General claim this Court should defer addressing the merits this action because MCCL has not sought an advisory opinion from the Commission pursuant to 2 U.S.C. § 437f. The Court does not agree. FECA does not require an interested party to seek an advisory opinion. More importantly, § 437f provides that a person may request an advisory opinion "concerning the application of … a rule or regulation prescribed by the Commission, *with respect*

*to a particular transaction or activity* by the person." 2 U.S.C. § 437f(a)(1) (emphasis added). MCCL does not challenge the application of § 114.10 to a particular transaction. MCCL claims § 114.10 is unconstitutional on its face. The advisory opinion process would be of no assistance in resolving this claim. *See Maine Right to Life Comm. v. Federal Election Comm'n,* 914 F.Supp. 8, 10 (D.Me.1996) (holding that party asserting constitutional challenge to Commission regulation need not seek prior advisory opinion from Commission pursuant to 2 U.S.C. § 437f). The Court pays no deference to the Commission's interpretation of the First Amendment.

the absence of those which are unconstitutional. *See New York v. United States*, 505 U.S. 144, 186, 112 S.Ct. 2408, 2434, 120 L.Ed.2d 120 (1992); *Upper Midwest Booksellers Ass'n v. City of Minneapolis*, 780 F.2d 1389, 1399 (8th Cir.1985); *see also Planned Parenthood of Central Missouri v. Danforth*, 428 U.S. 52, 83, 96 S.Ct. 2831, 2848, 49 L.Ed.2d 788 (1976) (holding that if the provisions are "inextricably bound together" then they must "stand or fall as a unit").

■ The Court finds the additional provisions of § 114.10 challenged in this case are not severable from those provisions which are unconstitutional under *Day*. These provisions are not "fully operative as law" in the absence of the unconstitutional provisions. Section 114.10(c) sets out a precise, five-part definition of "qualified nonprofit corporations" entitled to the exemption. This was the Commission's very purpose for enacting § 114.10. *See* 31 C.F.R. § 114.10(a) (stating that the Commission enacted § 114.10 to "describe those nonprofit corporations that qualify for an exemption from the prohibition against independent campaign expenditures"). The Court has concluded two of these components—§ 114.10(c)(2) and (4)— are unconstitutional. The Court does not find the Commission would expand the definition of "qualified nonprofit corporation" to include any corporation which merely has the remaining three parts, and that § 114.10(c) would be "fully operative" in the absence of these two essential conditions.[15] Thus the definition of a "qualified nonprofit corporation" set out in § 114.10(c) is void in its entirety.

■ Moreover, because the Court finds the Commission's definition of "qualified nonprofit corporations" is void, the remainder of § 114.10 also falls. The remaining provisions purport to place conditions on "qualified nonprofit corporations" as that term is precisely defined in the regulations. In the absence of that definition, these remaining provisions are clearly not "fully operative" and capable of enforcement.[16] As a result, they must also be voided.

Based on its finding that the remainder of § 114.10 is not severable from § 114.10(c)(2) and (4), the Court will not consider whether §§ 114.10(c)(1), (3), (5), (e) and (f) are independently unconstitutional. Such a constitutional determination is neither necessary nor prudent. The Court will, however, briefly address the parties' arguments with respect to these provisions with the following observations. *Day* fundamentally opposed the Commission's construction of *MCFL*. *Day* rejected a "bright-line" approach to implementing the *MCFL* exemption, and instead looked to the particular characteristics of the nonprofit as they relate to the purpose of § 441b and the members' First Amendment rights. Thus *Day* casts serious doubt on § 114.10(c)(1)'s requirement that a qualified nonprofit's "only" express purpose be the expression of political ideas and § 114.10(c)(3)(ii) requirement that a qualified nonprofit not have members which receive "any" benefit which is disincentive to disassociate themselves from the corporation. On the other hand, the Commission's regulations *implementing* an exemption likely will not run afoul of *Day*. The certification and reporting requirements do not restrict MCCL's qualification for the § 441b exemption and ability to engage in protected speech; these requirements appear well within the Commission's authority and are entitled to deference. The Court also observes that § 114.10(f)'s requirement that nonprofits in-

---

**15.** Notably, the Commission does not argue that §§ 114.10(c)(1) and (3) and (5) are severable from § 114.10(c)(2) and (4).

**16.** The Commission concedes that "absent its promulgation of 11 C.F.R. § 114.10(c), setting forth the requirements for exemption from the Act's independent expenditure prohibition, it would not have promulgated 11 C.F.R. § 114.10(e), which requires that corporations that make independent expenditures certify that

they meet the requirements of 11 C.F.R. § 114.10(c)." (Comm'n Suppl.Br. at 13.) The Commission argues, however, that § 114.10(f) is severable because it "stands independently of § 114.10(c)." The plain language of § 114.10(f) defeats this argument. It reads "[w]henever a *qualified nonprofit corporation* solicits donations, the solicitation shall inform potential donors that their donations may be used for political purposes, such as supporting or opposing candidates" (emphasis added).

form potential donors that their donations may be used for political purposes does not appear to unnecessarily restrict protected speech. Indeed, such a requirement is well-suited to protecting political speech and furthering the purpose of § 441b; of equal importance, it was specifically sanctioned by the Supreme Court in *MCFL*. *See MCFL*, 479 U.S. at 261, 107 S.Ct. at 629. These issues may, however, be resolved another day.

### Conclusion

Based on the foregoing, and upon all the files, records, and proceedings, herein, **IT IS ORDERED** that:

(1) Defendant Janet Reno's Motion to Dismiss (Doc. No. 14) is **GRANTED** and Plaintiffs' claims against her are **DISMISSED WITH PREJUDICE;**

(2) Defendant Federal Election Committee's Motion to Strike the Affidavit of Jacqueline A. Schwietz (Doc. No. 39) is **DENIED AS MOOT;**

(3) Defendant Federal Election Committee's Motion for Leave to File the Administrative Rulemaking Record (Doc. No. 40) is **DENIED;**

(4) Defendant Federal Election Committee's Motion for Expedited Discovery (Doc. No. 42) is **DENIED;** and

(5) **IT IS HEREBY DECLARED** that the regulations found at 11 C.F.R. § 114.10 are void under 5 U.S.C. § 706.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**