Annabelle L. **MARTIN**, Appellee,

v.

**SHEARSON LEHMAN HUTTON, INC.**, Appellant.

No. 92–1475.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 17, 1992.

Decided Feb. 18, 1993.

Rehearing and Rehearing En Banc Denied April 7, 1993.

Reggie C. Giffin, Kansas City, MO, argued (Christopher D. Schneider, on brief), for appellant.

Joseph Michael Chiarelli, Kansas City, MO, argued (Donald F. Bayer, on brief), for appellee.

Before BEAM, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and MORRIS SHEPPARD ARNOLD, Circuit Judge.

MORRIS SHEPPARD ARNOLD, Circuit Judge.

Annabelle Martin sued Shearson Lehman Hutton for violations of federal and state securities laws, common-law fraud, negligence, and breach of fiduciary duty in connection with a purchase that she had made of AMCCP, a preferred stock of American Continental Corporation ("ACC"). A jury returned a verdict for Martin in the amount of $28,795 in actual damages and $500,000 in punitive damages. Shearson appeals from judgments entered on these verdicts. Shearson also appeals from the court's award of attorneys' fees against it under Mo.Ann.Stat. § 409.411(a) (Vernon 1990). We affirm the compensatory award and reverse with respect to punitive damages and attorneys' fees.

## I.

Plaintiff was advised to buy AMCCP by one Robyn Ruppert O'Leary, who was an investment broker for Shearson. There was testimony that O'Leary had described the stock as a safe investment with a secure dividend and had guaranteed that ACC would repurchase it within three

years, despite the fact that Shearson management had instructed its brokers to halt recommendations for AMCCP. The parties are in agreement that O'Leary's actions were in violation of the securities laws. O'Leary told Martin to purchase the stock through B.C. Christopher, another brokerage house, because O'Leary would soon be moving to Christopher. Martin followed the advice. When ACC filed for Chapter 11 bankruptcy, all dividend payments on AMCCP ceased, and Martin's stock became worthless soon thereafter.

While Shearson raises numerous objections to the judgment against it, we note that each of plaintiff's theories of liability was submitted separately to the jury, and that all of plaintiff's theories were advanced to support the award of a single damage figure. It follows that if any of plaintiff's theories was submissible, the actual damage award may not be disturbed.

■ One of plaintiff's claims was that Shearson was liable as a "controlling person" pursuant to section 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78t(a). That statute states that any person who directly or indirectly controls any person who is liable for selling securities in violation of the act is liable to the same extent as the seller, unless he acted in good faith and did not directly or indirectly induce the act at issue. Shearson argues that it had too limited a connection to the sale at issue to be a controlling person, primarily because the sale was not consummated through its brokerage house and because the solicitation was directly contrary to its instructions to brokers, and thus the relevant acts were not within the scope of O'Leary's employment.

Our precedents constrain us to disagree with Shearson's contentions on this point. We have held that the statute reaches persons who have only "some indirect means of discipline or influence" less than actual direction. *Myzel v. Fields*, 386 F.2d 718, 738 (8th Cir.1967), *cert. denied*, 390 U.S. 951, 88 S.Ct. 1043, 19 L.Ed.2d 1143 (1968). In *Metge v. Baehler*, 762 F.2d 621, 631 (8th Cir.1985), *cert. denied*, 474 U.S. 1057, 1072, 106 S.Ct. 798, 832, 88 L.Ed.2d 774, 804

(1986), we held that liability did not depend on the controlling person's having exercised control over the particular transaction that gave rise to the violation. We think that O'Leary's solicitation of the business while she was an employee of Shearson is sufficient to make out a prima facie case of controlling person liability. As the district court pointed out in its order denying Shearson's post-trial motions, Shearson's agent solicited the purchase of the stock and misrepresented its nature. Shearson had the ability to discipline O'Leary's conduct, and it was this conduct that gave rise to the loss. *See also Lewis v. Walston & Co.*, 487 F.2d 617, 623–24 (5th Cir.1973).

■ Shearson also complains of the trial court's Instruction No. 9, which stated, in pertinent part, that " 'control' encompasses relationships such as that of a broker and a brokerage company." We are unsure of what these words were meant to convey: The word "encompasses" is vague and unclear in the context. Plaintiff asserts that the portion of the instruction complained of comes from *Hollinger v. Titan Capital Corp.*, 914 F.2d 1564, 1573–78 (9th Cir. 1990) (*en banc*), *cert. denied*, —— U.S. ——, 111 S.Ct. 1621, 113 L.Ed.2d 719 (1991). That case holds that a brokerage house is, as a matter of law, a controlling person for purposes of the securities laws, but that the brokerage house is not liable if it can prove good faith and a lack of inducement.

We find no error in the court's instruction. Under our cases, it appears that Shearson's status as employer is sufficient to establish it as a controlling person. Once Martin established this, as she clearly did, she had made her prima facie case and Shearson's good faith or failure to induce O'Leary's actions were matters for the defense. *See Metge*, 762 F.2d at 631. In this case, Shearson does not complain that the issue of its good faith and lack of inducement was not properly submitted.

Finding no error in the submission of plaintiff's federal securities claim to the jury, we affirm the award of compensatory damages and the judgment based on it.

## II.

Shearson also appeals the jury's award of punitive damages to Martin. The court instructed the jury that if it found for plaintiff on her common-law fraud claim, her misrepresentation claim, her negligence claim, or her breach of fiduciary duty claim, it could then award punitive damages against Shearson if it found that Shearson's conduct was "outrageous" because of its "evil motive or reckless indifference to the rights of others." Court's Instruction No. 26. (*See* MAI No. 10.01 and *Burnett v. Griffith,* 769 S.W.2d 780, 789 (Mo.1989) (*en banc*).) The plaintiff takes no exception to this statement of the law.

We see nothing in this record to support a finding of punitive damages under this instruction. There is ample evidence in the record, of course, from which a reasonable fact-finder could have awarded such damages against O'Leary, but the conduct of Shearson itself seems to us to fall well short of that described in the relevant instruction. The fact that Shearson violated some of its relevant internal rules, which it vigorously denies, would seem to us, on this record, to amount at most only to ordinary negligence. It was certainly not outrageous conduct. There was no attempt here, moreover, to impose punitive damages on Shearson on the principle of *respondeat superior,* and therefore that rationale for supporting the verdict, whatever may be the Missouri law on the subject, is unavailable to the plaintiff in this case. We therefore reverse the punitive damages judgment against Shearson.

## III.

Finally, Shearson argues that the trial court erred in granting plaintiff's motion for attorneys' fees in the amount of $255,141.25. Plaintiff moved for these fees under Mo.Ann.Stat. § 409.411(a) (Vernon 1990), which provides for the recovery of "reasonable attorneys' fees" by persons who succeed in suits brought under Missouri's securities laws.

## A.

Shearson first maintains that fees are not awardable under the Missouri securities laws because it could not be a controlling person under the circumstances of this case. *See* Mo.Ann.Stat. § 409.411(b) (Vernon 1990). We reject this contention for the same reasons as we rejected, *ante,* the essentially identical argument in respect to the federal securities laws, on which the Missouri statute is quite evidently modeled.

## B.

Shearson also calls attention to Mo. Ann.Stat. § 409.411(a)(1) (Vernon 1990), which provides that any person who "offers or sells a security in violation of [Missouri law] ... is liable to the person buying the security from him." Shearson asserts that this section cannot, as a matter of plain meaning, be applied against it in the circumstances of this case, since the plaintiff did not purchase any security from Shearson. Perhaps this is so, but Shearson misapprehends plaintiff's theory of the case. Plaintiff maintains, and we agree, that O'Leary was a seller or offeror, and that O'Leary was a person from whom the purchase was made, all within the meaning of the relevant Missouri statutory scheme. *See Pinter v. Dahl,* 486 U.S. 622, 642–47, 108 S.Ct. 2063, 2076–79, 100 L.Ed.2d 658 (1988), interpreting the corresponding provisions of the Securities Act of 1933. Shearson's liability is based, in turn, on its being a controlling person with respect to O'Leary. Shearson points to some cases interpreting state securities laws similar to Missouri's that it asserts require strict privity before liability can attach. *See, e.g., In re Diasonics Securities Litigation,* 599 F.Supp. 447 (N.D.Cal.1984), and *Nikkel v. Stifel, Nicolaus & Co.,* 542 P.2d 1305 (Okla.1975). Whatever the purport of those cases may be, we believe that the Supreme Court of Missouri, which has not as yet ruled on this matter, would be persuaded by the reasoning of the Court in *Pinter.* Besides the appealing character of the logic that appears there, there is the fact that the Missouri statute follows the federal statutory scheme quite closely.

## C.

Shearson also urges this court to hold that under the relevant Missouri law plaintiff was required to put the question of attorneys' fees to the jury as part of its case on damages—that, in other words, the trial court had no authority to award those fees pursuant to a post-trial motion. The statute states that a person protected by it "may sue ... to recover the consideration paid for the security, together with interest ... and reasonable attorneys' fees." Mo. Ann.Stat. § 409.411(a) (Vernon 1990).

Statutes providing for attorneys' fees frequently indicate who the relevant fact-finder should be. Under 42 U.S.C. § 1988(b), for instance, the judge awards fees in civil rights cases. In Missouri, to take another example, insurers are liable for "a reasonable attorney's fee" for a vexatious refusal to pay a claim; and the relevant statutes provide that the amount is to be fixed by "the court or jury," depending, presumably, on whether the trial itself is to a judge or to a jury. *See* Mo. Stat.Ann. § 375.296, § 375.420 (Vernon 1991). Therefore, when the trial in such a case is to a jury, the Missouri model jury instructions include a verdict form containing a blank for an amount "for attorney fees." *See* MAI No. 36.10.

Here, the statute is silent on the question of who should find the relevant predicate facts. It is Shearson's position that the fees are part of the damages recoverable and must therefore be fixed by the jury. There is no Missouri case squarely on point, though in *Dunn v. Bemor Petroleum, Inc.*, 680 S.W.2d 304, 307 (Mo.Ct.App. 1984), which the trial court had decided on a motion for summary judgment, the court assumed that if the case had been triable to a jury the question of fees would have been for the jurors. The court held, however, that the trial court was sitting in equity and would therefore have ruled on the question of fees in any event. *Id. See also Monetary Management Group v. Kidder, Peabody & Co.*, 615 F.Supp. 1217, 1224–25 (E.D.Mo.1985) (court, sitting in equity, awarded fees on the basis of a post-trial motion).

On balance, we believe that Shearson has the better of the argument. The plaintiff chose to bring her action at law when the applicable statute gave her the choice to sue at law or in equity. The statute provides that the amounts recoverable include attorneys' fees, and plaintiff put on no proof during the trial as to what they were. Based on the Missouri practice relevant to suits for vexatious refusal, and the limited Missouri precedents bearing on this particular issue, we hold that plaintiff has lost the right to recover attorneys' fees. We think it significant that plaintiff was unable to direct our attention to a case under Mo.Ann.Stat. § 409.411(a) (Vernon 1990) where a court, not sitting in equity, made an award of fees.

We therefore reverse the district court in this respect.

## IV.

For the reasons given, we affirm the judgment below with respect to compensatory damages, and reverse the judgments for punitive damages and attorneys' fees.