# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-3047

_____

| | | |
|---|---|---|
| United States Securities and Exchange Commission, | * | |
| | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | |
| v. | * | |
| | * | |
| Nicholas A. Zahareas, | * | |
| Tuschner & Co. Inc., | * | Appeal from the United States |
| | * | District Court for the |
| Defendants, | * | District of Minnesota |
| | * | |
| John M. Tuschner, | * | |
| | * | |
| Defendant - Appellant, | * | |
| | * | |
| Euroamerican Securities, S.A., | * | |
| | * | |
| Defendant. | * | |

_____

Submitted:  May 16, 2001

Filed:  November 29, 2001

_____

Before MORRIS SHEPPARD ARNOLD, BRIGHT, and BYE, Circuit Judges.

_____

BYE, Circuit Judge.

John M. Tuschner appeals the district court's grant of the Securities and Exchange Commission's (SEC) motion for summary judgment holding him liable under Section 20(e) of the Securities and Exchange Act of 1934.  See 15 U.S.C. § 78t(e).  Under the SEC's most recent theory, Nicholas Zahareas, a securities broker barred from the United States market, was "controlled by" Tuschner, a Minneapolis-based broker.[1]  According to the SEC, Tuschner's purported control over Zahareas made Zahareas an "associated person" of a United States securities broker in contravention of a securities bar order.  See 15 U.S.C. § 78c(a)(18).  On the record before us, however, we conclude that the SEC has failed to show that Zahareas was "controlled by" Tuschner under the plain language of 15 U.S.C. § 78c(a)(18).  We therefore reverse the district court's summary judgment, and remand for the entry of judgment in favor of Tuschner.

I

The SEC originally brought civil enforcement proceedings against Nicholas Zahareas, John M. Tuschner, the American firm of Tuschner & Co., and the Greek firm of Euroamerican Securities, S.A.  Tuschner was the president and CEO of Tuschner & Co., which is registered with the SEC.[2]  Zahareas is the president and majority shareholder of Euroamerican Securities, S.A., a financial consulting and brokerage firm doing business in Athens, Greece.

During the time in question, Zahareas was the subject of a 1993 bar order.  The SEC's action against Tuschner rests on its claim that Tuschner aided Zahareas in

---

[1]The SEC claimed that Tuschner, the individual, aided and abetted Tuschner & Co. by allowing Zahareas to become associated with the firm.  For simplicity's sake, throughout the opinion we will refer solely to Tuschner, the individual.

[2]Tuschner is the only defendant remaining in this case.  The other defendants previously reached settlement agreements with the SEC.

becoming an "associated person" of a United States securities broker, because Zahareas was "controlled by" Tuschner in accordance with 15 U.S.C. § 78c(a)(18).

The parties largely agree on the underlying facts in this case, which were fully articulated by the district court. See SEC v. Zahareas, 100 F. Supp. 2d 1148 (D. Minn. 2000). Our account would not differ markedly, and we refer the reader to the district court's opinion. Our disagreement is not with the facts, but with the district court's application of the facts to the statute. Therefore, we focus on the plain language of § 78c, and our discussion of the facts will be interspersed with our discussion of the statute.

Before applying the statute, we note the procedural posture of this case and our standard of review. In June 1998, we affirmed the district court's preliminary injunction in favor of the SEC based on the parties' submissions at the time. SEC v. Zahareas, 167 F.3d 396 (8th Cir. 1999). Our review was necessarily cursory at that stage. Since then, the parties have conducted extensive discovery, and filed cross-motions for summary judgment. The parties have marshaled new evidence and proffered additional arguments. Indeed, the SEC has again altered its theory of liability. It is for this reason that we have long held that "findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding." Patterson v. Masem, 774 F.2d 251, 254 (8th Cir. 1985). Accordingly, as with any motion and cross-motion for summary judgment, we review the district court's decisions de novo. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Christopher v. Adam's Mark Hotels, 137 F.3d 1069, 1071 (8th Cir. 1998).

II

The dispositive issue is whether Zahareas was "controlled by" Tuschner. The case against Tuschner turns on that question because that was the statutory provision

relied upon by the SEC below to claim that Zahareas was an "associated person" of Tuschner under 15 U.S.C. § 78c(a)(18).

The statute defines "associated person" as follows:

Any partner, officer, director, or branch manager of such broker or dealer (or any person occupying a similar status or performing similar functions), any person directly or indirectly controlling, controlled by, or under common control with such broker or dealer, or any employee of such broker or dealer.

15 U.S.C. § 78c(a)(18).

The district court held that "the evidence sufficiently establishes that Zahareas was controlled by Tuschner . . . therefore he was an 'associated person' under federal securities law." Zahareas, 100 F. Supp. 2d at 1153. Reviewing de novo the entire record on summary judgment, we conclude that the district court erred in holding Zahareas was controlled by Tuschner.

The district court first noted that the SEC applies "general principles of agency law" to determine whether Tuschner . . . controlled Zahareas. As the district court acknowledged, "[f]rom a purely agency law perspective" the SEC's case would fail. Id. Zahareas was almost certainly not an employee of Tuschner. Tuschner never put Zahareas on the company payroll and never paid him a regular salary. Tuschner never even visited Zahareas's office, let alone directed his work. By all accounts, Zahareas controlled his own Greek employees, and performed his own financial consulting work with his own Greek clients.

The district court recited essentially four reasons why it believed the SEC showed Tuschner "controlled" Zahareas. First, the district court stated that "Tuschner

was the underwriter for the IPO, and in that capacity, it controlled access to ACT[3] shares . . . Zahareas was completely dependent on Tuschner's control of access to the ACT IPO." Id. This fact does not seem particularly revealing to us. Instead, it simply reflects the right of any seller in an arms-length business transaction. Even if a seller refused to sell a unique good to a particular buyer, few would say that the seller "controls" that buyer. This also represents a limited view of the securities market. While it is true IPOs often offer attractive pricing, fungible securities like this are readily available after the IPO. Indeed, Zahareas was free to buy ACT stock, or recommend it to his customers, through other market-maker firms. To hold that a refused buyer becomes an "associated person," whenever an underwriter does not sell to that buyer, would expand the scope of liability under § 78c(a)(18) beyond recognition.

Second, the district court cited Tuschner's ability to direct Zahareas to transfer the accounts of the Greek investors who had purchased ACT shares. In September 1997, after the SEC began its investigation, Tuschner formally severed ties with Zahareas, and sent a letter to Zahareas directing him to transfer the accounts of the Greek investors to another Greek broker-dealer or investment firm. When asked by the SEC whether Zahareas had agreed to transfer the accounts, Tuschner replied, "He has no choice on it. They will be transferred." Again, this seems little more than the ordinary response of a broker asserting his rights over his own accounts. If anything, the fact that all of the Greek customers transferred their accounts from Tuschner shows that Zahareas exercised his own control over his Greek customers.

Third, the district court stated that Zahareas relied exclusively upon Tuschner's paperwork to set up the accounts for the Greek customers buying ACT shares. To this end, the record reflects that Tuschner supplied the application materials, W-8 tax

---

[3]ACT refers to ACT Teleconferencing. Tuschner was underwriting ACT's initial public offering (IPO).

forms, margin agreements, and quarterly and monthly statements. Tuschner's compliance officer also reviewed, verified, and corrected any errors on the paperwork. The district court believed this evidence showed that Tuschner controlled the "means and manner of performance" of Zahareas. Zahareas, 100 F. Supp. 2d at 1153 (citing Guhlke v. Roberts Truck Lines, 128 N.W.2d 324, 326 (Minn. 1964)).

The SEC has pointed to no precedent in which providing and verifying paperwork amounts to "control" under § 78c(a)(18). The admissible evidence demonstrates that Tuschner lacked control over Zahareas's "means and manner" of performance. Tuschner knew little about how Zahareas conducted his business in Greece. Tuschner provided none of the workplace instruments such as telephones or computers. Zahareas had anywhere between 20 and 50 employees working for him, none of whom were hired or monitored by Tuschner. The evidence fails to support a conclusion that Tuschner controlled Zahareas's "means and manner" of performance, and no reasonable jury would so conclude.

Fourth and finally, the district court accepted the SEC's alternate theory that, regardless of anything else, "Zahareas was a Tuschner & Co. representative in everything but name." Id. at 1154. In doing so, the district court departed from the plain language of the statute. Perhaps this was inevitable due to the lack of guidance on the meaning of "controlled by." But in our view, the district court departed significantly from the express scope of the Congressional statute.

"The starting point for ascertaining the intended meaning of any statute is the language of the statute itself." United States v. McIntosh, 236 F.3d 968, 971 (8th Cir. 2001). Here, the statute is detailed and exacting in its language. It simply does not define "associated person" to include anyone like a registered representative. It is only by judicially grafting onto the statute such an expansive clause that the district court could come to its conclusion. But "[c]ourts are obligated to refrain from embellishing statutes by inserting language that Congress has opted to omit." Root

v. New Liberty Hosp. Dist., 209 F.3d 1068, 1070 (8th Cir. 2000).  We therefore decline to interpret "associated person" as including a registered representative.

The SEC also appeals to general policy considerations in urging a "broad construction" of the securities law to "prevent evasion of the Act's proscription against broker-dealers engaging in the securities business."  Van Alstyne, Noel & Co., 43 S.E.C. 1080, 1087 (1969).

Even were we to depart from the statutory analysis in favor of general policy intent, we would interpret the laws in a more, not less, restrictive manner.  For over 60 years, Congress has carefully limited the federal securities laws to the domestic shores of the United States.  In its original enactment, the Act itself stated that:

> The provisions of [the Securities Exchange Act] or of any rule or regulation thereunder *shall not apply to any person insofar as he transacts business in securities without the jurisdiction of the United States*, unless he transacts such business in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate to prevent the evasion of this [Act].

15 U.S.C. § 78dd(b) (Section 30(b) of the 1934 Act) (emphasis added).

Despite being granted some authority by the statute, the SEC never enacted a rule or regulation applicable to transactions with foreign brokers such as those between Tuschner and Zahareas.  Indeed, the SEC has noted its adherence to the territorial limitations set forth in § 78dd(b).  See, e.g., 54 Fed. Reg. 30,013, 30,016 (Exchange Act Release No. 34-27017) (July 18, 1989) (stating the SEC "uses a *territorial approach* in applying the broker-dealer registration requirements to the international operations of broker-dealers.  Under this approach, *all broker-dealers physically operating within the United States* . . . would be required to register as broker-dealers .") (emphasis added).

-7-

This territorial approach was based at least in part on avoiding the jurisdictional entanglement between United States securities laws and European securities dealers. Here, Zahareas's customers were all European; Zahareas made no sale to an American customer. The transaction with Tuschner was at arms-length. Indeed, European financial consultants and securities brokers would be quite surprised to learn that they were "controlled by" an American broker simply by selling an IPO using the broker's forms. Moreover, the SEC all but ignores the European and Greek securities laws in pursuit of its novel application of United States laws.

Congress may amend the statute to reach activities such as Tuschner's; indeed, the SEC itself has some authority to enact new rules and regulations in this area. But we are bound by the current language of the statute and regulations. Simply put, the SEC has failed to present evidence sufficient for a reasonable jury to conclude that Zahareas was "controlled by" Tuschner. Accordingly, the SEC has not shown a statutory basis for the enforcement proceeding.

### III

For the reasons stated above, we reverse the district court's summary judgment in favor of the SEC, and we vacate the permanent injunction. We remand for entry of judgment in favor of Tuschner.

BRIGHT, Circuit Judge, dissenting.

I respectfully and strongly dissent.

Judge Doty determined in part:

> The precise issue before the court is whether Tuschner & Co. exerted sufficient influence over Zahareas' securities dealings to render Zahareas an "associated person" as the term is used in the Exchange Act. The court finds that the evidence sufficiently establishes that Zahareas was controlled by Tuschner & Co. therefore he was an "associated person" under federal securities law.

SEC v. Zahareas, 100 F. Supp. 2d 1148, 1153 (D. Minn. 2000). This case presents the factual issue of whether Tuschner "controlled" Zahareas. The district court thoroughly examined the facts presented to it and determined that Tuschner & Co. did control Zahareas. This court should not reverse that fact-based decision.

The majority determines that the evidence fails to support the conclusion that Tuschner "controlled" Zahareas's means and manner of performance. Although the majority discusses the statutory definition of "associated person," it fails to consider the definition of "control."

The phrase "directly or indirectly controlling," as used in the Securities and Exchange Act, is a plain, direct phrase emanating from the verb "control." In Black's Law Dictionary, the verb form of "control" states in part: **"1.** To exercise power or influence over . . . **2.** To regulate or govern . . . ." BLACK'S LAW DICTIONARY 330 (7th ed. 1999). Stated simply, "control" includes the exercise of restraint or direction. RANDOM HOUSE WEBSTER'S UNABRIDGED DICTIONARY 442 (2d ed. 1997).

The majority accepts the facts found by the district judge but rejects the district court's inference that Tuschner controlled Zahareas in Greece. The district court's factual determinations show that Tuschner exercised power, influence, and direction over Zahareas in marketing the initial offering of ACT Teleconferencing.

The district court determined that Tuschner's control of access to ACT's initial public offering made Zahareas dependent upon Tuschner. <u>Zahareas</u>, 100 F. Supp. 2d at 1153. 200-300 Greek investors were steered by Zahareas to Tuschner; these Greek customers received a Tuschner account number and Tuschner materials. <u>Id.</u> at 1153-54. Tuschner only severed ties with Zahareas after the SEC began to examine their relationship, then directed Zahareas on how to terminate the relationship. <u>Id.</u> at 1153. Tuschner provided Zahareas with Tuschner's account opening materials, applications, W-8 tax forms, and margin agreements. <u>Id.</u> Tuschner reviewed and approved new account information from Zahareas on the Greek customers. <u>Id.</u> These are but a few of the facts found by the district court that show Tuschner controlled Zahareas.

The majority has applied the principles of agency and determined that Zahareas was not Tuschner's agent in order to reverse the district court. The agency theory was properly rejected by the district court because there are more ways to prove control than merely showing an agency relationship existed. <u>Id.</u> at 1153. In essence, the majority interprets control as equivalent to agency. Such analysis and reliance on agency principles fail to give the applicable statute a fair reading, considering the obligation of the SEC to oversee the securities markets and marketing.

I would affirm for the reasons so ably stated by Judge Doty in <u>SEC v. Zahareas,</u> 100 F. Supp. 2d 1148 (D. Minn. 2000).

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.