# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 03-2630

_____

United States Securities and                 *
Exchange Commission,                          *
                                              *
                                              *
            Appellee,                         *
                                              *    Appeal from the United States
      v.                                      *    District Court for the
                                              *    District of Minnesota.
Nicholas A. Zahareas; Tuschner &              *
Company, Inc.;                                *
                                              *
            Defendants,                        *
                                              *
John M. Tuschner;                             *
                                              *
            Appellant,                        *
                                              *
Euroamerican Securities, S.A.                 *
                                              *
            Defendant.                        *

_____

Submitted:   February 13, 2004
     Filed:   July 7, 2004

_____

Before BYE, HEANEY, and SMITH, Circuit Judges.

_____

HEANEY, Circuit Judge.

John M. Tuschner appeals the denial of his application for attorney's fees under the Equal Access to Justice Act (EAJA).  For the reasons stated below, we reverse and remand to the district court for further proceedings consistent with this opinion.

## I. BACKGROUND

This case has been in the courts for over six years and is currently before this court for the fourth time.  The facts have been clearly articulated in prior opinions. We summarize them here for the purposes of this appeal.

In July 1993, the Securities and Exchange Commission (SEC) settled a civil enforcement proceeding filed against Nicholas Zahareas resulting in Zahareas being permanently barred from "associating with" an investment broker, dealer, advisor, or company or participating in the securities industry in the United States.  In 1996, Zahareas, who was then living in Greece, founded Euroamerican Securities (Euroamerican), a brokerage and financial consulting company doing business in Athens, Greece.  Also in 1996, Zahareas entered into an agreement with Tuschner in which Zahareas would recruit Greek investors to open accounts with Tuschner & Co., a securities broker-dealer located in Minneapolis, Minnesota, to purchase shares in an initial public offering that Tuschner & Co. was underwriting.

In 1997, the SEC filed suit against Tuschner, Tuschner & Co., Zahareas, and Euroamerican alleging that Zahareas's relationship with Tuschner & Co. violated the 1993 bar order and that the defendants had violated various provisions of the Securities and Exchange Act.  On January 28, 1998, the district court denied the defendants' motions to dismiss for lack of jurisdiction and granted the SEC's motion for a preliminary injunction.  The defendants appealed the injunction and a divided panel of this court affirmed the district court's order. SEC v. Zahareas, 167 F.3d 396 (8th Cir. 1999).

In 2000, after extensive discovery, the SEC and Tuschner brought cross motions for summary judgment.[1] The district court granted the SEC's motion and permanently enjoined Tuschner from violating, and aiding and abetting violations, of 15 U.S.C. § 78o(b)(6)(B)(i) and (ii) of the Securities and Exchange Act. SEC v. Zahareas, 100 F. Supp 2d. 1148, 1156 (D. Minn. 2000). On appeal, again in a divided panel decision, this court reversed the district court, vacated the permanent injunction, and remanded for entry of judgment in favor of Tuschner. SEC v. Zahareas et al., 272 F.3d 1102 (8th Cir. 2001). The SEC's petition for rehearing was denied.

Tuschner then filed for attorney's fees pursuant to 28 U.S.C. § 2412(b) and (d)(1)(A), asserting that the SEC's case was not substantially justified and was pursued in bad faith. The district court denied the motion holding that: (1) the SEC's case was reasonable, and therefore substantially justified; (2) the SEC's case was novel, therefore special circumstances dictated against awarding fees; and (3) Tuschner was ineligible for an award because he failed to demonstrate that he actually incurred any attorney's fees. Tuschner now appeals.

## II. EQUAL ACCESS TO JUSTICE ACT

The EAJA provides that a prevailing party is entitled to an award of fees and expenses in any action brought by or against the United States "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). In Pierce v. Underwood, the Supreme Court defined substantially justified as having a "reasonable basis both in law and fact," or being "justified in substance or in the main." 487 U.S. 552, 565 (1988) (citations and internal quotations omitted). Therefore, the government's position can be substantially justified even though

---

[1] The other defendants settled with the SEC.

ultimately incorrect, as long as "a reasonable person could think it correct." Id. at 566 n.2. The government, however, is not exempt "from liability under the EAJA merely because it prevailed at some interim point in the judicial process." Sierra Club v. Sec'y of Army, 820 F.2d 513, 517 (1st Cir. 1987). The fact that the district court in this case found for the SEC is a factor weighing in the government's favor, but the district court's judgment "is not sufficient, in and of itself, to show that the Government's position was substantially justified." Davidson v. Veneman, 317 F.3d 503, 507 (5th Cir. 2003). Rather, "[t]he most powerful indicator of the reasonableness of an ultimately rejected position is a decision on the merits and the rationale which supports that decision." Friends of Boundary Waters Wilderness v. Thomas, 53 F.3d 881, 885 (8th Cir. 1995) (reversing the district court and awarding attorney's fees). Moreover, the government must show "that it acted reasonably at all stages of the litigation." Davidson, 317 F.3d at 506 (citing 28 U.S.C. § 2412(d)(2)(D)); see also Keasler v. United States, 766 F.2d 1227, 1231 (8th Cir. 1985) (stating that "the position of the government" includes "the government's positions at both the prelitigation and litigation states"). The government bears the burden of proving that its position was substantially justified. Friends of Boundary Waters Wilderness, 53 F.3d at 885.

The substantial justification standard, however, should not be used to deter the government from bringing cases of first impression or offering novel arguments. The special circumstances exception "is a 'safety valve' designed to 'insure that the Government is not deterred from advancing in good faith the novel but credible extensions and interpretations of the law that often underlie vigorous enforcement efforts.'" Russell v. Nat'l Mediation Bd., 775 F.2d 1284, 1290 (5th Cir. 1985) (quoting H.R. Rep. No. 96-1418 at 11 (1980)). Still, the mere fact that the government advances a novel argument does not automatically insulate it from EAJA liability. Keasler, 766 F.2d at 1234 ("That a case presents an issue of first impression in the forum does not ipso facto make the government's position in the litigation reasonable."); Russell, 775 F.2d at 1290 (stating that the special circumstances

exception "merely preserves government efforts to present creative legal interpretations, which though not yet commonly accepted, still merit the court's careful examination" (citation and internal quotations omitted)).

In addition, the EAJA provides that the "United States shall be liable for such fees and expenses to the same extent that any other party would be liable under the common law." 28 U.S.C. § 2412(b). Therefore, the government may be liable for attorney's fees if it acted in bad faith. Am. Hosp. Ass'n v. Sullivan, 938 F.2d 216, 219 (D.C. Cir. 1991); Brown v. Sullivan, 916 F.2d 492, 495 (9th Cir. 1990). "Bad faith has been broadly defined to include acts of 'obdurate obstinacy,' or conduct that has compelled the plaintiff to litigate recognized legal rights clearly owed." Haycraft v. Hollenbach, 606 F.2d 128, 133 (6th Cir. 1979) (per curiam) (citation omitted). Attorney's fees can be awarded if the "bad faith (1) occurred in connection with the litigation, or (2) was an aspect of the conduct giving rise to the lawsuit." Am. Hosp. Ass'n, 938 F.2d at 219. This basis for recovery is a narrow one and is to be "imposed only in exceptional cases and for dominating reasons of justice." Brown, 916 F.2d at 495 (citation and internal quotations omitted).

### III. ANALYSIS

We review the district court's decision denying attorney's fees under the EAJA for an abuse of discretion; reviewing conclusions of law de novo and findings of fact for clear error. United States Dep't of Labor v. Rapid Robert's Inc., 130 F.3d 345, 347 (8th Cir. 1997).

### A. Substantial Justification

The district court cited to several factors in finding that the SEC's case was substantially justified. First, the district court referred to the previous district and circuit court holdings in the government's favor. According to the district court, the

SEC's victories below "*individually* have, at the very least, some probative force of the existence of substantial justification; *collectively*, however, these factors stand as a powerful testament to the existence of substantial justification for the SEC's position." (Appellant's Addendum B at 11.) Second, citing to several cases in which our court interpreted the word "control," the district court found that the SEC's argument that Zahareas was controlled by Tuschner was reasonable in law. According to the district court, although our court ultimately disagreed with the conclusion that Tuschner controlled Zahareas, "the SEC's legal position was at least a colorable, reasonable attempt at defining an otherwise undefined phrase." (Id. at 12.) Third, relying on the undisputed communications and dealings between Tuschner and Zahareas, the district court found that the SEC's factual basis was reasonable.

The fact that the district court and our court found for the SEC at various stages in the litigation does not automatically grant the government immunity from EAJA liability. See Herman v. Schwent, 177 F.3d 1063 (8th Cir. 1999) (reversing district court and granting attorney's fees); Friends of the Boundary Waters Wilderness, 53 F.3d at 885 (holding that the district court erred in denying fees by relying "too heavily upon its original opinion and Judge Magill's dissent from our decision reversing that opinion"). Instead, we must fully analyze the facts and law under the applicable standards. In addition, we have the benefit of looking at the case in its entirety, reviewing all the issues presented and the SEC's actions both prior to and during the litigation. From this vantage point, we find that the SEC's case was not substantially justified.

The SEC's legal theory in this case went through several twists and turns. Originally, the SEC argued that Zahareas was akin to an employee of Tuschner & Co. and, therefore, was "associated with" Tuschner & Co. In granting the preliminary injunction, the district court agreed with the SEC and found both that Zahareas was an agent of Tuschner & Co., and that "Zahareas exerted control over Tuschner & Co."

Although our court upheld the preliminary injunction, Judge Morris Sheppard Arnold, in his dissent, recognized that the SEC had "abandoned its original position in favor of an argument that Mr. Zahareas was an 'associated person' because he was under Tuschner & Co.'s control." Zahareas, 167 F.3d at 397. When the case returned to our court on appeal from the grant of a permanent injunction, Judge Bye, writing for the majority, noted that, "the SEC has again altered its theory of liability." Zahareas, 272 F.3d at 1105.

The SEC's changing legal theories were accompanied by unsupportive facts. The SEC claimed that the relationship between Tuschner and Zahareas was so close that Tuschner effectively "controlled" Zahareas. The findings of our court, however, directly contradict this assertion. Our court found that Zahareas was never on Tuschner & Co.'s payroll, that Tuschner had never visited Zahareas's office and knew little about how Zahareas conducted his business, and that Zahareas conducted his own financial consulting business with his own Greek clients and his own employees, none of whom were hired by or took direction from Tuschner. "Simply put, the SEC failed to present evidence sufficient for a reasonable jury to conclude that Zahareas was 'controlled by' Tuschner." Id. at 1107.

The SEC's changing legal theories and nonconforming facts were likely a result of its failures during its investigation of Tuschner. The SEC fell short on several procedural fronts while investigating Zahareas and Tuschner. First, the SEC failed to obtain testimony or documents from Zahareas before filing suit. The SEC entered this litigation with the belief that Zahareas established Euroamerican specifically to conduct business with Tuschner & Co., when in fact Euroamerican is a financial consulting business in its own right, conducting business with several other Greek companies which trade in Greek securities and employing more people than Tuschner & Co. ever did. Second, the SEC failed to make inquiries of Greek securities regulators as to the business activities of Euroamerican until nearly two years after it filed an action against Tuschner. Third, the SEC failed to allow

Tuschner to make a "Wells Submission."  Pursuant to 17 C.F.R. § 202.5(c), persons involved in an SEC investigation may submit a written statement to the SEC before its staff seeks approval for an action from the Commission.  The written statement is attached to any memoranda recommending to the Commission that an action be commenced. Id.  Although the SEC argues that a Wells Submission is not a right, the SEC investigator responsible for this case stated that he had never before been involved in an SEC investigation in which a Wells Submission had not been utilized.  Fourth, the SEC failed to obtain approval for this action during a meeting of all the Commissioners.  According to Tuschner, SEC actions are normally authorized after a meeting with all five members of the Commission and relevant members of the staff.  These meetings allow for discussion and debate within the SEC and result in approval of an action only after a consensus is reached.  In this case, the Commissioners' approval was obtained by "seriatim" consideration.  That is, the staff approached each of the Commissioners individually to solicit their approval for this action.  Therefore, the action against Tuschner was approved of by each Commissioner without the benefit of a meeting or group discussion.  The SEC argues that seriatim consideration is a perfectly appropriate means of seeking approval.  Pursuant to 17 C.F.R. § 200.42(a), however, individual approval of an action is allowed when a full meeting is "unnecessary in light of the nature of the matter, impracticable, or contrary to the requirements of agency business."  There is nothing about this case which causes us to think that a full meeting was neither "unnecessary," nor did the SEC present any evidence that a full meeting was "impracticable."

The SEC argues that the information eventually obtained from Zahareas and the Greek regulators was not dispositive of the SEC's case.  Perhaps not, but the information would have aided the SEC in determining the extent and significance of Zahareas's relationship with Tuschner & Co.  This, no doubt, would have affected the SEC's decision to bring an action and the legal theory under which an action would have been brought.  In addition, had Tuschner and Zahareas been able to make a

Wells Submission, they would have presented the SEC with relevant information allowing the SEC to come to the same conclusion that our court ultimately did; that is, that Euroamerican was not founded solely to do business with Tuschner & Co., that Euroamerican was a financial consulting business in its own right, that it was unnecessary, and perhaps inappropriate, for the SEC to attempt to "protect" Greek investors, and that Tuschner & Co. did not "control" Zahareas. Indeed, had Tuschner been afforded the opportunity to make a Wells Submission outlining his position, and had the entire Commission met to deliberate, we believe that this litigation would never have occurred.

It is not our intent to tell the SEC how to conduct its investigations or how to decide when to bring an action. In this case, however, we find that the SEC's failure to appropriately and adequately investigate Tuschner according to its own rules and guidelines, led the SEC to bring an action based on an ungrounded and unsubstantiated legal theory, and without sufficient factual support. Accordingly, we find that the SEC's case was not substantially justified.

## B. Special Circumstances

The district court held that an award of attorney's fees was not warranted in this case because the novel argument presented by the SEC fell under the special circumstances exception. See 28 U.S.C. § 2412(d)(1)(A). According to the district court, "[g]iven the strong appearance of impropriety, from the very beginning and throughout, the SEC was fully justified in attempting to reach these activities by advancing a purportedly novel, yet credible, interpretation of the securities laws." (Appellant's Addendum B at 17.)

We find it difficult, however, to protect the SEC from liability due to its presentation of a novel argument in this case when the SEC failed to thoroughly investigate before bringing suit. See United States v. Estridge, 797 F.2d 1454, 1458

(8th Cir. 1986) (affirming the district court's award of fees under the EAJA where the government did not "diligently investigate" before initiating an action). The special circumstances exception seeks to allow the SEC to vigorously enforce the securities laws. Such "vigorous enforcement," however, should not be protected when the SEC fails to diligently investigate the parties involved in the action and circumvents its own guidelines in seeking approval to bring an action. As discussed above, these failures and omissions led the SEC to bring an action against Tuschner which was unwarranted, wreaking havoc on Tuschner's professional life, and ultimately causing his business to go bankrupt. We refuse to apply the special circumstances exception to protect the SEC from its own failures and omissions.

## C. Bad Faith

An award of attorney's fees for government actions taken in bad faith is only available in "exceptional circumstances." Havrum v. United States, 204 F.3d 815, 819 (8th Cir. 2000) (citing Brown, 916 F.2d at 495). Although the SEC's actions were not substantially justified, we cannot say that the SEC's actions were "vexatious, wanton or oppressive." Brown, 916 F.2d at 495). Therefore, we hold that the SEC's conduct was not in bad faith and did not violate 28 U.S.C. § 2412(b).

## D. Eligibility for an Award

The goal of the EAJA is to remove the deterrent effect of having to pay attorney's fees to defend against unreasonable government action. SEC v. Comserv Corp., 908 F.2d 1407, 1415 (8th Cir. 1990). The EAJA provides for the award of attorney's fees if: (1) the person is a prevailing party; (2) the individual's net worth did not exceed $2,000,000 at the time the civil action was filed; and (3) the fees and expenses were "incurred by that party in [the] civil action" in which it prevailed. 28 U.S.C. § 2412(d)(1)(A)-(2)(B).

It is undisputed in this case that Tuschner is a prevailing party. What is at issue, however, is whether Tuschner actually incurred any fees. See Comserv, 908 F.2d at 1414 (stating that "fees are 'incurred' when there is a legal obligation to pay them"). Tuschner bears the burden of proving that he has incurred legal fees under the EAJA. See NAACP v. Donovan, 554 F. Supp. 715, 718 (D. D.C. 1982) (stating that "the burden of proof is always on the applicant to prove entitlement to fees").

According to the district court, because Tuschner & Co. was contractually obligated to pay Tuschner's fees, Tuschner never actually "incurred" any fees. Even though Tuschner stated that he agreed to be personally responsible for the fees, the district court found that "no such agreement has been produced by Tuschner or his attorneys [and] no evidence has been produced indicating that Tuschner ever actually paid a bill." (Appellant's Addendum B at 20.)

Tuschner submitted in an affidavit that Tuschner & Co. agreed to pay for his legal expenses, but later reneged on that agreement. Since entering that agreement, Tuschner & Co. has dissolved, filed for bankruptcy, and has failed to pay the fees. It follows, both logically, and according to Tuschner's sworn statement, that he is currently obligated to pay the fees. Tuschner, and his former company, Tuschner & Co., has been embroiled in litigation with the SEC for over six years. As a result, Tuschner has been unable to work in his chosen profession and his company has gone bankrupt; all due to an action brought by the SEC which we find to have lacked substantial justification. The district court listed several items that Tuschner should have presented to prove that he actually incurred fees; such as a written agreement between Tuschner and his counsel, copies of bills, or cancelled checks. We know of no case that requires such documentation. Both Tuschner and his attorney have submitted affidavits stating that Tuschner & Co. has not paid the fees, that Tuschner & Co. has gone bankrupt and no longer exists, and that Tuschner has agreed to be responsible for the fees. The record lacks any evidence to the contrary and, therefore,

-11-

we hold that Tuschner has indeed "incurred" fees, making him eligible for an award pursuant to the EAJA.

## CONCLUSION

For the foregoing reasons we find that the SEC's case was not substantially justified, that special circumstances do not dictate against awarding fees, and that Tuschner did incur legal fees for the purposes of the EAJA. Accordingly, we reverse the district court and remand for proceedings consistent with this opinion.

SMITH, Circuit Judge, dissenting.

Though I agree with much of the majority's analysis, I cannot concur with its holding that the SEC's position was not substantially justified. Tuschner can recover fees only if the SEC's position was not "substantially justified" or if the SEC brought the action in "bad faith." 28 U.S.C. § 2412(b), (d)(1)(A). The "substantially justified" standard is satisfied when the government had a "reasonable basis both in law and fact" for its position. *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). A position "can be justified even though it is not correct, and we believe it can be substantially justified if a reasonable person could think it correct." *Id.* at 566 n.2. We have concluded that EAJA fees should not be awarded when "at least one permissible view of the evidence leads to the conclusion that the government has shown a reasonable basis in fact and law for its position." *See Jackson v. Bowen*, 807 F.2d 127, 130 (8th Cir. 1986).

In *Pierce*, the Supreme Court found that certain "objective indicia" are relevant in determining whether the government's position was substantially justified, including without limitation, the stage at which the proceedings were resolved, the terms of any settlement agreement entered into by the parties, and the views

expressed by other courts on the merits. 487 U.S. at 568-569. The SEC prevailed at several important points during the underlying action.

First, the district court denied Tuschner's motion to dismiss the SEC's action and granted the SEC's motion for a preliminary injunction after concluding that the evidence supported a finding that Zahareas and Tuschner & Co. violated the Exchange Act and Tuschner aided and abetted those violations. This court affirmed. The district court subsequently granted the SEC's motion for summary judgment, while denying Tuschner's cross motion for summary judgment. In addition, this court's panel decision reversing the grant of summary judgment was issued over a strong dissent by Judge Bright. Finally, four of the nine judges of this court who considered the SEC's petition for rehearing *en banc* voted to grant the SEC's petition, which would have had the practical effect of vacating the panel's opinion. The district court concluded that:

> [a]ll of these factors individually have, at the very least, some probative force of the existence of substantial justification; collectively, however, these factors stand as a powerful testament to the existence of substantial justification for the SEC's position.

The government's ability to convince federal judges at the trial and appellate levels of the reasonableness of its interpretation of the law tends to show that the government was substantially justified in bringing this action. *See Sierra Club v. Secretary of the Army*, 820 F.2d 513, 519 (1st Cir. 1987) (court "readily acknowledge[d] that when the United States wins several rounds but ultimately loses on points, its early success is some evidence of justification which the court should factor into the EAJA analysis"). "Even if the judges' and Government's position is ultimately rejected in a final decision on the merits, it is the 'most powerful indicator of the reasonableness of an ultimately rejected position.'" *Herman v. Schwent*, 177

F.3d 1063, 1065 (8th Cir. 1999) (quoting *Friends of the Boundary Waters Wilderness v. Thomas,* 53 F.3d 881, 885 (8th Cir. 1995)).

The majority correctly points out that some success at various stages in the litigation does not automatically grant the government immunity from EAJA liability. In *Herman*, we reversed the district court's denial of attorney's fees under the EAJA holding that the district court abused its discretion in concluding that the government's position was substantially justified. We rejected the district court's conclusion because it based its conclusion upon facts and arguments that we had specifically rejected as clearly erroneous and unsupported by the record. 177 F.3d at 1066. Those are not the facts of this case.

Further, the SEC's position that Zahareas was "associated with" and "controlled by" Tuschner was reasonable. In the underlying action, the SEC sought to establish that Zahareas was associated with Tuschner & Co. because sections 15(b)(6)(B)(i) and (ii) of the Exchange Act provide that broker-dealers violate the law when they "associate" with a person subject to a bar order. Section 3(a)(18) of the Exchange Act defines a "person associated with a broker or dealer" and an "associated person of a broker or dealer" to include "any person directly or indirectly controlling, controlled by, or under common control with such broker or dealer, or any employee of such broker or dealer." 15 U.S.C. § 78c(a)(18).

The SEC presented evidence that Zahareas was "controlled by" Tuschner & Co. to satisfy section 3(a)(18). There were no cases presented that directly address the definition of control in section 3(a)(18). Instead the SEC relied upon holdings that a brokerage firm exercises "control" over a securities salesperson where it has "some indirect means of discipline or influence [short of] actual direction." *Martin v. Shearson Lehman Hutton, Inc.*, 986 F.2d 242, 244 (8th Cir.), cert. denied, 510 U.S. 861 (1993). Although the SEC was mistaken in its interpretation of the "controlled by" language, it convinced several jurists that the position was not only reasonable,

but might be right. Accordingly, I would hold that the SEC's position was substantially justified.

_____